Donald H. SHEFFIELD et al.,

v.

The STATE OF TEXAS et al.

Civ. A. No. 3–75–1065–F.

United States District Court,
N. D. Texas,
Dallas Division.

April 19, 1976.

Earl Luna and Thomas V. Murto, III, Dallas, Tex., for plaintiffs.

John Hill, Atty Gen., Jackson D. Wilson, II and William C. Bednar, Jr., Asst. Attys. Gen., Austin, Tex., for defendants.

## OPINION AND ORDER

Before GOLDBERG, Circuit Judge, and HILL and PORTER, District Judges.

PER CURIAM.

1. NATURE OF THE CONTROVERSY: As members of the Board of Trustees and management of the Carrollton-Farmers Branch Independent School District, the Plaintiffs, both individually and as representatives of a class, which purportedly en-

compasses all present and future pupils of the school district as well as their parents, bring suit against the State of Texas and others charged with the administration of the Texas Minimum School Foundation Grant Program, asserting that the program distributes state funds according to a formula which is based upon erroneous land valuation. The purpose of the Texas Grant Program is to aid the local school districts of Texas in financing their educational needs, and as such, the program is designed to distribute funds to the various school districts in inverse proportion to the amount of funds each school district is capable of contributing to that state fund. Thus in general, the richer or the more capable a school district is of providing for its own needs through taxation of its own property, the less money it will receive from the Grant Program, while the reverse is true for the poor or less well financed school districts in Texas. According to Plaintiffs, the Defendants have refused to equalize grossly disparate land values set both in their district and other school districts similarly situated, even though as they allege the Defendants are under both a statutory and constitutional duty to do so. The thrust of Plaintiffs' complaint is that the valuation of land, which to a large extent dictates whether a district is to be classified as "rich" or "poor", has been determined in an arbitrary and discriminatory manner. For reasons set forth below we abstain and dismiss this case.

■ ■ 2. A THREE JUDGE COURT CASE: As their first procedural defense, the Defendants urge that Plaintiffs' original complaint is simply an attack on the application of what is otherwise a constitutional statute, and as such, should be decided by a single judge. We decide otherwise.

As provided by 28 U.S.C. § 2281 a single judge is prohibited from entering an injunction

restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an *administrative board or commission* acting under [the] State statute. (emphasis supplied).

In 1923 Justice Holmes writing for the Court in *Oklahoma Natural Gas Co. v. Russel,* 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659 (1923) reasoned that when a corporation commission was empowered by state statute to set rates, and those rates were denied once by the Commission and then again by the State's highest court, which had authority to hear appeals from the corporation commission, an order of statewide significance had been entered and therefore must be challenged pursuant to the requirements of Section 2281. Subsequently the Court considered *Ex Parte Bransford,* 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249 (1940), in which the plaintiff, in a case quite similar to the one now before the Court, brought suit seeking to enjoin the collection of certain taxes. Under the state's statutory scheme, assessments were first made by a county assessor with an appeal lying directly to a state board, which would then return the reviewed assessment to the county supervisor who would add local rates and place the "final" assessment on the tax rolls. Collection was performed at the local level with collected funds apportioned between the state and the county. The plaintiff argued that the statute was discriminatory and hence unconstitutional in that assessments were mistakenly made by the tax assessor, or alternatively, that the tax assessor misinterpreted the taxing statute and did not correctly value the property to be taxed. With that factual predicate in mind, the Court held that a three judge court is not required where the mere application of a statute is questioned.

Case development since the *Bransford* decision is difficult to compartmentalize into principled rules which are susceptible of easy application.[1] Generally however the

---

1. The "as applied and on its face" distinction has been roundly criticized by commentators. See e. g. Currie, The Three Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. 1, 37 (1964).

more localized the decision or regulation promulgated by the state the less likely the courts will be to find statewide policy under attack. See e. g. *Herkness v. Irion,* 278 U.S. 92, 49 S.Ct. 40, 73 L.Ed. 198 (1928); *Bd. of Regents v. New Left Ed. Project,* 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972). There are of course grey areas where it is unclear when a plaintiff is challenging the impact of an administrative order requiring a three judge court, and when such a challenge is to the unconstitutional application of an otherwise constitutional provision, requiring only a single judge. The perplexity of the problem lies in the fact that an individual administrative determination can be a manifestation of a much more general statewide policy as well as simply a decision of the individual case.[2] For example in *Alabama Pub. Serv. Com. v. Southern R. Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) the simple refusal by a commissioner to allow a railroad company to abandon service was held sufficient to require the attention of a three judge court. Even an order by an individual in state government empowered to decide policy on a statewide basis is properly the subject of a three judge court. *Sands v. Wainwright,* 491 F.2d 417, 427 (5th Cir. 1973); *Gilmore v. Lynch,* 400 F.2d 228, 230 (9th Cir. 1968).

In the present case Plaintiffs assert in their original complaint that the Defendants have:

systematically refused and continue to refuse to perform their duties to equalize the value of property *for the school districts so that each will obtain its appropriate share of the state funds for the Foundation School Program,* in violation of the due process and equal protection clauses. (emphasis supplied)

and Plaintiffs pray that the Court

hold that *the plan of the State of Texas*

*and the implementation of the statute* mentioned hereinabove constitutes an illegal plan and scheme of taxation. (emphasis supplied)

We agree that the complaint states that a "systematic scheme or plan" for financing school districts in general is being attacked and that it is archetypical of the circumstances envisaged by Congress for the application of the three judge court device. *Phillips v. U. S.,* 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941). That position is substantiated by the fact that Plaintiff defines the term "Defendants", *inter alia,* as the State of Texas, the Governor and the Commissioner of Education. The dominant theme of Plaintiffs' original complaint is that there has been a fundamental policy decision by the State to allow reported values of land to stand in spite of the fact that they fail to portray actual market values.

If there remains some doubt as to whether the original complaint is attacking a statewide order, there can be no such doubt that the amended complaint, which alleges that the state equalization panel was following a criteria established by the state commission when it refused Plaintiffs' requested adjustments, is attacking such an order. We conclude, therefore, that Plaintiffs have pled a case within the ambit of Section 2281, either in their original complaint or in their amended complaint and we hereby grant leave to file the amended complaint. Unlike *Bransford,* the Plaintiffs are not attacking the valuation placed upon their property, perhaps mistakenly by a tax assessor, but rather they are attacking a statewide policy which they say expressly fails to equalize erroneous land valuation. It is the statutorily mandated or perhaps sanctioned failure to correct the alleged mistake and not the mistake itself, which is being challenged and which makes this

---

2. One is reminded of Alice's poignant dialogue with Humpty Dumpty, when faced with such semantical difficulties.

'When I use the word,' Humpty Dumpty said in a rather scornful tone, 'it means just what I choose it to mean—neither more nor less.' 'The question is,' said Alice, 'whether you can make words mean so many different things.'
'The question is,' said Humpty Dumpty, 'which is to be master—that's all.' L. Carroll, Through the Looking Glass (1871), reprinted in the Annotated Alice, 269 (M. Gardner ed. 1960).

matter, an appropriate one for consideration by a three judge court.

■ 3. VENUE AND ABSTENTION: The State next moves to dismiss on two grounds: (1) that venue is improper, and (2) that this Court should abstain from prematurely deciding a question of constitutional significance when state court statutory interpretation may solve the controversy. At the outset we note that venue, having a statutory heritage, should be considered and decided prior to a determination of whether this Court should abstain. While abstention is based upon broad notions of comity and federalism, it is still simply a judicially created concept used to allocate proper decision-making authority between the federal and state courts. A court does not always abstain because it is required to do so but does so in certain limited circumstances because in those fact situations, it is more just and efficient in the long run to leave some matters to the state courts.[3]

■ VENUE: Whether venue is proper in this case turns upon two rules of equal dimension contained in 28 U.S.C. § 1391 and highlighted in the following excerpt:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district *where all defendants reside,* or *in which the claim arose.* (emphasis supplied).

The State first contends that the complaint outlines a cause of action against individuals acting in their official capacities and hence that venue is properly in the state capitol, Austin, their official residence. *See, e. g., Trueman Fertilizer Co. v. Larson,* 196 F.2d 910 (5th Cir. 1952). That initial thrust is parried by the Plaintiffs, who argue that once an individual defendant has been alleged to have violated the law—due process and equal protection in this case— he transcends his capacity as an officer of the state and is transformed into an ordinary citizen residing in his ordinary residence. In *Smith v. Merill,* 81 F.2d 609 (5th Cir. 1936) the Fifth Circuit enunciated a rule like that now urged by the Plaintiffs. Implicit in *Smith* is the rationale that the government official allegedly acting outside the scope of his public capacity should not enjoy the benefit of defending on his own turf those unlawful wrongs which are committed against the public he is to serve. By easing the burden of bringing suit in cases of this kind the Fifth Circuit seems to be construing the venue statutes in a remedial fashion to discourage unlawful actions taken by public officials.

Applying the *Smith* rule to the facts of this case, we find that venue is proper in this district. Plaintiffs' complaint *alleges* a cause of action against state officials based upon unlawful (unconstitutional) actions. We need only comment here that the useful fiction of official residence created for the benefit of the public may be destroyed by the simple allegation that the Defendant is unlawfully acting against the public.

Alternatively, we conclude that the claim arose in this district, and therefore venue is proper here notwithstanding the residence of the Defendants. The State argues that because the statute was passed and signed into law in Austin; the value data compiled and transmitted in Austin; and, the Commissioner of Education, Governor and review panel refused to equalize market evaluation in Austin, the claim therefore arose in that district. But the effect of the statute's passage and administration has been clearly felt in the Northern District. If is the Farmers Branch School system which is asserting that it is having money taken from it unfairly, and it is that district which is asserting that it is not being treated equally under the laws of Texas. Our analysis is bottomed upon our conclusion that the injury alleged in this case has or will occur in the Northern District. *Rosen v. Savant Instruments, Inc.,* 264 F.Supp. 232 (E.D.N.Y.1967); See also Comment, *Federal Venue: Locating the Place where the Claim*

---

3. *See generally* Hart and Wechsler, The Federal Courts and the Federal System, p. 988 (Bator, Mishkin, Shapiro, Wechsler eds. 1973) (hereinafter referred to as Hart and Wechsler).

*Arose,* 54 Tex.L.Rev. 392, 407 (1976). In summary then, venue is properly laid in the Northern District either because the Defendants reside in this district or because the claim arose here.

 ABSTENTION: As we noted at the outset, we abstain and dismiss this case because we conclude that the state courts should be given an opportunity to articulate the meaning of the statute called into question in this case which, in our opinion, may itself require the equalization in valuation demanded my Plaintiffs. *See Carey v. Sugar,* —— U.S. ——, 96 S.Ct. 1208, 47 L.Ed.2d 587, 44 U.S.L.W. 4416 (U.S. March 23, 1976). It is important to note that the issue before us is not whether the parties have a valid or worthwhile claim, but rather is whether the federal courts or the state courts should first grapple with the problem as it is presented. It is then, the threshold question of "who" should first make the decision, and not "whether" it should be made, that we decide today.

While case development of the abstention doctrine is long and intricate and need not be reviewed exhaustively here,[4] there does exist a skeletal structure which is readily identifiable and which guides the Court in its decision to abstain. We take as given, the axiom that the federal courts have as their historical duty the protection of federal constitutional rights.[5] To avoid a decision of constitutional dimensions that is clearly presented is unacceptable and unfounded.[6] The Supreme Court has repeatedly disapproved of lower federal courts cowing under the convenient rubric of abstention in the face of complicated or challenging problems of constitutional analysis. *See, e. g., Harris County Comm'rs Court v. Moore,* 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

Yet constitutional interpretation is not a topic for tinkers; it is a serious business to void a newly enacted state statute which has been tediously shaped by state representatives who have been elected by the people. Accordingly, in a number of carefully defined circumstances, the Court has approved abstention as the proper procedural course to avoid unnecessary federal-state friction. This is particularly true in cases, such as the one now before us, in which the subject matter of the suit is peculiarly within the province of local courts and a decision under state law may be dispositive of the entire controversy. *See Harris County Comm'rs Court v. Moore, supra.*

Two considerations have been recognized to weigh heavily in the ultimate decision of whether to abstain:

> First, a federal court should only abstain where some important value unrelated to the precedential weight of the forum is involved; it is improper to abstain merely because state court pronouncements on state law issues are authoritative or because state courts are more familiar with state law. Second, state law must be sufficiently unclear that a substantial likelihood exists that a state court resolution of the state law issues will forward the goal that the abstention was meant to achieve. *Iowa Indep. Bankers v. Board of Governors of the Federal Reserve System,* 167 U.S.App.D.C. 286, 299, 511 F.2d 1288, 1301 (1975).

We think that this test properly reflects the limited applicability of the abstention doctrine, see *Joiner v. City of Dallas,* 380 F.Supp. 754, 763 (N.D.Tex.1974), while at the same time it helps predict the necessity for the doctrine's application in the proper circumstances. The first part of the test recognizes that the mere fact that state law is unclear does not of itself preclude contin-

---

4. Hart and Wechsler at 988; see also A. Wright, Law of Federal Courts, § 52 (1970).

5. A. Hamilton, The Federalist Papers No. 80, (1787) reprinted in The Federalist: A Commentary on the Constitution of the United States, 313 (E. Earle ed. 1961); *Harris County Comm.*

*Ct. v. Moore,* 420 U.S. 77, 83, 95 S.Ct. 870, 874, 43 L.Ed.2d 32, 38 (1975).

6. In fact as early as 1821, Chief Justice Marshall warned that such avoidance would be treasonous. *Cohens v. Virginia,* 6 Wheat. 264, 403, 19 U.S. 264, 403, 5 L.Ed. 257, 291 (1821).

uing federal jurisdiction. There must be an important state interest in the outcome of the decision in addition to normal state interest in controlling its own decisional law which can be manifest by a significant historical, political or economic commitment to the subject matter of the law suit. Similarly, the second part of the test, recognizes the fact that the state law must not only be unclear but that the ambiguities and uncertainties found in the state law must if resolved have a substantial likelihood of pretermitting constitutional inquiry.

In the instant case we are confronted with a recent amendment to a complex statute which historically has guided the redistribution of the Texas educational dollar between hundreds of school districts in Texas.[7] There can be no doubt that significant political and economic commitment has been and is manifest in the continuing funding and administration of the Minimum School Foundation Grant Program.[8]

Nor can there be any doubt that there is a substantial likelihood that state interpretation of the new and untested portions of the Act called into question in this suit may resolve the entire controversy which is now before us. Section 16.252(b) of H.B. 1126, enacted in 1975, provides:

A district's share of the program cost for the 1975–1976 and 1976–1977 school year is based on the value of the district's property for the 1974 tax year as reported in the 'official compilation of 1974 School District Market Value Data', office of the Governor, State of Texas. The commissioner may reduce the local share of a district in which local natural or economic disaster has dramatically reduced the value of the property since

1974. *The Commissioner's decision is final.* (Emphasis supplied)

A fair reading of that section may be dispositive of the constitutional questions raised in this case, as the Commissioner may be under a statutory duty to correct or equalize discrepancies in property evaluation. Certainly the State's Attorney General has construed the instant act's ancestor to require a uniform valuation standard. *See* Texas Opinion No. H–448 to Dr. Brockette, Nov. 12, 1974; Texas Letter Advisory No. 109, to Senator Mauzy, May 27, 1975. We see no reason to plunge headlong into a battle over the constitutionality of the apportionment of funds under the Minimum School Foundation Grant Program when such a new controversy is the proper subject of state court statutory construction and may very well terminate there. Should, however, a Federal constitutional issue be reserved[9] and clearly remain after the state court has considered the problem, the federal courts would of course remain open to vindicate the constitutional rights of those aggrieved.

Finally, we note that while the language in Section 16.252(b) provides that the Commissioner's decision is final and thus may arguably preclude any further state review of the Act, it is at least implicit in Opinion H–448 and Advisory Letter 109, that the State's Attorney General believes statutory construction of the Act can and will take place in the state courts. Moreover the Texas Administrative Procedure Act, which became effective January 1, 1976, provides that any final administrative decision can be appealed to state courts. Indeed any conflicting provision in any other statute has been expressly repealed. Tex.Rev.Civ. Stat.Ann. Art. 6252–13a, § 22 (1976). Hence while there may be a tentative argument that final state construction has al-

7. See *San Antonio School District v. Rodriguez,* 411 U.S. 1, 9, 93 S.Ct. 1278, 1283, 36 L.Ed.2d 16, 28 (1973) for a discussion of the history of the Minimum School Foundation Grant Program.

8. Id.

9. See *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

ready been rendered through the Commissioner's decision,[10] we are persuaded that, at best, the argument is one which quite properly should first be presented to the state courts for a definitive analysis.

It is therefore ORDERED that the above styled and numbered cause be dismissed without prejudice.[11]

10. The better interpretation would seem to be that the word "final" is a term of art meaning that all "administrative" action has ended. Tex.Rev.Civ.Stat.Ann. Art. 6252–13a, § 16(a) (1976).

11. See *Harris County Com'r. Ct. v. Moore, supra,* at n. 14.