Lenore RETTIG, Plaintiff,

v.

ARLINGTON HEIGHTS FEDERAL SAV-
INGS AND LOAN ASSOCIA-
TION et al., Defendants.

Bernyce R. WALD, Plaintiff,

v.

CHICAGO FEDERAL SAVINGS & LOAN
ASSOCIATION et al., Defendants.

Shelvin SINGER and Gloria Singer, In-
dividually and on behalf of a class,
Plaintiffs,

v.

CHICAGO FEDERAL SAVINGS & LOAN
ASSOCIATION et al., Defendants.

Benjamin J. COHEN and Bernice
Cohen, Plaintiffs,

v.

COOK COUNTY FEDERAL SAVINGS &
LOAN ASSOCIATION, a Federal Sav-
ings and Loan Association, et al., De-
fendants.

Nos. 74 C 3151, 74 C 3221, 74 C 3222
and 75 C 407.

United States District Court,
N. D. Illinois, E. D.

June 10, 1975.

John A. Doyle, Ltd., Chicago, Ill., for plaintiff.

Barnabas F. Sears, James N. Kosmond, T. D. Roti, Boodel, Sears, Sugrue, Giambalvo & Crowley, Chicago, Ill., for defendants Morton, Jannon, Ovath, Gilbert, Schaeffer, Klehm, Sponer and Benson.

Leon Lecour Dolet and E. F. McDonnell, Jr., Anderson, Dolet & McDonnell, Oscar Marquis and Wm. R. Verhuel, Chicago, Ill., for Arlington Heights Fed. Sav. and Arlington Agency, Inc.

## MEMORANDUM OPINION

WILL, District Judge.

The four lawsuits currently pending before this court, *Leonore Rettig v. Arlington Heights Federal Savings and Loan Association, et al.*, No. 74 C 3151; *Bernyce R. Wald v. Chicago Federal Savings & Loan Association, et al.*, No. 74 C 3221; *Shelvin Singer, et al. v. Chicago Federal Savings & Loan Association, et al.*, No. 74 C 3222; and *Benjamin J. Cohen, et al. v. Cook County Federal Savings & Loan Association, et al.*, No. 75 C 407; are evidently all part of the wave of such suits that were filed in the Circuit Court of Cook County, Illinois, following the Illinois Supreme Court's decision in *Kerrigan v. Unity Savings Ass'n.*, 58 Ill.2d 20, 317 N.E.2d 39 (1974). The court there held that the directors of a state savings and loan association had improperly diverted a corporate opportunity open to the association as well as breached their fiduciary duties by causing individual borrowers to be referred to a director-controlled insurance agency to procure necessary insurance in connection with their loans.

The plaintiffs in each of the instant cases are savings account depositors in their respective associations. They

bring suit on their own behalf, on behalf of all depositors, and derivatively on behalf of the association against the association, its officers and directors, and the insurance agencies involved, charging, *inter alia,* that each defendant association in connection with its loans, places homeowners', fire, theft, and other types of insurance, through the defendant insurance agencies owned by the defendant directors and officers. Since each association was at all relevant times allegedly authorized to sell such insurance through a service corporation, or a subsidiary of a service corporation, the plaintiffs contend that the defendant directors and officers fraudulently diverted to themselves a business opportunity available to the association, and thereby breached their fiduciary duty to the association.

The plaintiffs seek, among other relief, an accounting and an order compelling the defendant insurance agencies and the individual defendants to return all commissions and fees allegedly diverted or misappropriated from the associations. There is a conspicuous absence in plaintiffs' state court complaints of any reference to federal statutes or regulations, except the mention that the defendant associations are federal savings and loan associations chartered by the Federal Home Loan Bank Board (Board), pursuant to the Home Owners' Loan Act (HOLA), as amended, 12 U.S.C. § 1461 et seq., and that the rules and regulations of the federal savings and loan system, together with each association's charter and by-laws, prescribe that the business and affairs of each association shall be exercised by its board of directors and officers.

The defendants in each of these cases have removed to this court pursuant to 28 U.S.C. § 1441(a) and (b), basing federal jurisdiction upon 28 U.S.C. §§ 1331 and 1337. They allege that the plaintiffs' cause of action "arises under" the provisions of the HOLA, and that interpretation of the Act, the federal charter, and the rules and regulations of the Board, will be required for a full adjudi-

cation. The plaintiffs have responded by moving to have the cases remanded to the state court. Urging that the plaintiffs' right to select their own forum should not be upset in these cases, plaintiffs contend that they have purposely asserted their rights under the applicable state law, and that the complaints do not present any claim or right arising under the Constitution, treaties or laws of the United States within the meaning of 28 U.S.C. §§ 1331 or 1337. They further argue that federal law is merely ancillary to the major thrust of the lawsuit, that, at best, federal regulations pertaining to corporate opportunity and fiduciary duties are mere reiteration of state law, and that in any event, state courts are empowered to apply federal law.

## REMOVAL JURISDICTION

Whether a lawsuit is removable under 28 U.S.C. § 1441 depends upon whether the cause of action arises under the Constitution or laws of the United States. As the plaintiffs correctly point out, the alleged federal statutory violation must be an essential element of the cause of action, and may not be set forth in an ancillary fashion or by way of defense. *Gully v. First National Bank in Meridian,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). The controversy generally must be disclosed on the face of the complaint, unaided by defendants' answer or petition for removal. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Crow v. Wyoming Timber Products Co.,* 424 F.2d 93 (10th Cir. 1970). Provided concurrent jurisdiction exists, the plaintiff, by strategically framing the allegations of the complaint, has the right to choose the status of his case regarding removability. *Crow, supra.* As Moore explains: 1A Moore's Federal Practice 474:

. . . where plaintiffs' claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and pitch his claim on the state ground.

The plaintiff, however, may not defeat removability by attempting to draft the complaint around what is essentially a federal cause of action. According to Moore, 1A Moore's Federal Practice 474–475:

> A suit may, however, be removed, where the real nature of the claim asserted in the complaint is federal, irrespective of whether it is so characterized; or where the plaintiff inadvertently, mistakenly, or fraudulently conceals the federal question that necessarily would have appeared if the complaint had been well pleaded.

The court therefore may look beyond the verbiage of the state court complaint to the substance of plaintiffs' claimed grievance, and may, where appropriate, properly take judicial notice of any federal laws necessarily brought into play. *Ulichny v. General Electric Co.,* 309 F. Supp. 437 (N.D.N.Y.1970); *LaChemise Lacoste v. The Alligator Co.,* 313 F. Supp. 915 (D.Del.1970); *Sylgab Steel & Wire Corp. v. Strickland Transportation Co.,* 270 F.Supp. 264 (E.D.N.Y.1967); *S. E. Overton Co. v. International Brotherhood of Teamsters, Chauffers, Warehousemen & Helpers of America, AFL,* 115 F.Supp. 764 (W.D.Mich.1953). Where federal substantive law is found to be controlling either by reason of the exclusive jurisdiction of the federal courts, or federal preemption, the suit is properly removable. *Minkoff v. Scranton Frocks, Inc.,* 172 F.Supp. 870 (S.D. N.Y.1959); *Fay v. American Cystoscope Makers,* 98 F.Supp. 278 (S.D.N.Y.1951).

Focusing upon these guiding principles, the primary question before the court, then, is whether federal law covering the alleged diversion of corporate opportunity and breach of fiduciary duty by directors and officers of federal saving and loan associations has supplanted the state common law relied upon by the plaintiffs. For the reasons set forth hereinafter, we find that the Board's rules and regulations augmented by federal common law has preempted the field, that, as a result, plaintiffs' cause of action does involve questions of controlling and overriding federal law, and defendants are, therefore, entitled to remove to the federal court.

## FEDERAL PREEMPTION

Federal savings and loan associations are instrumentalities and agencies of the United States, *United States v. Harper,* 241 F.2d 103 (7th Cir. 1957); *First Federal Savings and Loan Ass'n v. Loomis,* 97 F.2d 831 (7th Cir. 1938), created as part of a nationwide network of mutual thrift institutions to provide a safe place for people to invest their money and to acquire financing for homes. These federal associations are chartered by the Board in accordance with the HOLA, 12 U.S.C. § 1461 et seq. which authorizes the Board, "under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation and regulation of [such institutions]." Pursuant to this authority, the Board has promulgated comprehensive rules and regulations, "covering all aspects of every federal savings and loan association from its cradle to its corporate grave." *Kupiec v. Republic Federal Savings and Loan Association,* 512 F.2d 147 at 149 (7th Cir. decided March 4, 1975) citing *Meyers v. Beverly Hills Federal Savings & Loan Ass'n,* 499 F.2d 1145, 1147 (9th Cir. 1974).

By virtue of the plenary powers vested in the Board by the HOLA, the courts have consistently recognized the congressional intent to have federal law govern the regulation and supervision of federal associations. *Lyons Savings and Loan Association v. Federal Home Loan Bank Board,* 377 F. Supp. 11, 17 (N.D.Ill.1974); *People v. Coast Federal Savings & Loan Association,* 98 F.Supp. 311 (S.D.Cal.1951). The cases are legion which hold that this preemptive delegation of authority to the Board extends to the internal operations of these institutions, precluding any regulation or interference by the states. *Meyers v. Beverly Hills Federal*

*Savings & Loan Ass'n, supra; Murphy v. Colonial Federal Savings & Loan Association,* 388 F.2d 609 (2d Cir. 1967); *Federal Savings & Loan Ins. Corp. v. Third National Bank in Nashville,* 153 F.2d 678 (6th Cir.) *cert. denied,* 329 U. S. 718, 67 S.Ct. 49, 91 L.Ed. 622 (1946); *Federal Savings and Loan Ins. Corp. v. Kearney Trust Co.,* 151 F.2d 720 (8th Cir. 1945); *Durnin v. Allentown Federal Savings and Loan Ass'n,* 218 F.Supp. 716 (E.D.Pa.1963); *Washington Federal Savings and Loan Association v. Balaban,* 281 So.2d 15 (Fla.1973). See particularly *City Federal Savings and Loan Association v. Crowley,* 393 F.Supp. 644 (E.D.Wis., decided April 24, 1975).

Consistent with these holdings, the defendants argue that the Board's regulatory actions covering both the authority of federal associations to sell insurance and the obligation of directors regarding corporate opportunities, are exclusively controlling here. They further contend that, to the extent that there may be gaps in the Board's coverage of these matters, it is necessary for the court to fashion or apply federal common law. In any event, they maintain that state common or statutory law is clearly inapplicable. We agree.

## BOARD REGULATION AND POLICY STATEMENTS

The threshold question in the instant cases—whether the federal associations through service corporations were at all relevant times empowered to act as insurance agents or brokers, and therefore capable of undertaking the alleged opportunity—has been the subject of considerable regulation by the Board. The Board has consistently taken the position that under the governing provisions of the HOLA, savings and loans associations are not permitted to engage directly in the insurance business. They are, however, authorized to invest in service corporations, organized and incorporated under state law, in order to supplement and facilitate the services of the association.

Although the Board does not regulate the service corporation per se, in exercising its plenary authority over the parent association, the Board delineates those pre-approved activities which qualify such corporations as permissible investments, and, to the extent the service corporation participates in activities which are not pre-approved, such investments may be made only with the Board's consent. If the service corporation is conducting non-permissible activities, unless such activities are discontinued, the savings and loan association must divest itself of its investment in the service corporation. Consequently, a federal savings and loan association could not invest in a service corporation acting as an insurance agency without prior approval of the Board.

The corporate power of the federal associations to conduct insurance business through a service corporation arises exclusively, if at all, from 12 U.S.C. § 1464(c) which authorizes federal associations to invest in subsidiary corporations under certain circumstances and limitations, and 12 C.F.R. § 545.9–1, which prescribes the permissible activities of such service corporations. The interpretation and application of these federal laws and their predecessor statutes and regulations is, therefore, necessary to determine when and under what conditions, if any, the associations had the corporate power to engage in the insurance business.[1]

The Board has also taken regulatory action in the area of directors' and offi-

---

1. In this regard, it should be noted that as early as November 8, 1967, in a statement of policy, 12 C.F.R. § 556.3, the Board indicated that it would consider for approval investments in "b-type" service corporations which would operate as an insurance agency or brokerage business for the benefit of the association. Although subject to numerous revisions and amendments since 1965, § 545.-9–1, has, during certain time periods thereafter, included insurance as a pre-approved activity for service corporations.

cers' fiduciary obligations to the association. The Board has expressly required that federal associations maintain safe and sound management policies for the protection of the insured members. 12 C.F.R. § 563.17. Consistent with, and in furtherance of the Board's expressed "paramount interest in the prevention and elimination of practices and conditions which adversely affect the interest of members in insured institutions; [and] the soundness of such institutions," 12 C.F.R. § 571.1(a), the Board has issued statements of policy dealing with, *inter alia,* conflicts of interest and corporate opportunity. On November 19, 1970, the Board amended its statement of policy regarding conflicts of interest to provide:

> Among the practices and conditions which have such adverse effects are conflicts between the accomplishment of the purposes of Title IV set forth in paragraph (a) of this section and the personal financial interests of directors, officers, and other affiliated persons of insured institutions. Conflicts of this type which have demonstrably resulted in such adverse effects are considered by the Board to be inherently unsafe and unsound practices and conditions. The Board accordingly holds that each director, officer, or other affiliated person of an insured institution has a fundamental duty to avoid placing himself in a position which creates, or which leads to or could lead to, a conflict of interest having such adverse effects. 12 C.F.R. § 571.7(b).

Paragraph (c) of section 571.7 recognizes that the Board cannot possibly define every practice or condition which falls within the broad concept of objectionable conflict of interest, and it is expressly stated that omission by the Board to prohibit a specific course of conduct should not be taken as a tacit approval thereof.

On February 6, 1974, the Board adopted a Statement of Policy respecting "Corporate Opportunity In Insured Institutions," 12 C.F.R. § 571.9:

> Directors and officers of an insured institution and other persons having the power to direct the management of the institution, stand in a fiduciary relationship to the institution and its accountholders or shareholders. Out of this relationship arises, among other things, the duty of protecting the interests of the institutions. It is a breach of this duty for such a person to take advantage of a business opportunity for his own or another person's personal profit or benefit when the opportunity is within the corporate powers of the institution or a service corporation of the institution and when the opportunity is of present or potential practical advantage to the institution. If such a person so appropriates such an opportunity, the institution or service corporation may claim the benefit of the transaction or business and such person exposes himself to liability in this regard. In determining whether an opportunity is of present or potential practical advantage to an institution the . . . [Board] will consider, among other things, the financial, managerial, and technical resources of the institution and its service corporation, and the reasonable ability of the institution directly or through a service corporation to acquire such resources.

 The foregoing statements, taken together, are not, as plaintiffs suggest, mere reiteration of state common law, warranting concurrent jurisdictional treatment. While the Board's pronouncements may reflect a distillation of the general law in this area, they represent a *codification* by the Board of those activities which directors and officers of federal associations may not engage in. Having been published in the Federal Register, these statements of policy are tantamount to regulations, having full force and effect. *Lyons Savings and Loan Association v. Federal Home Loan Bank Board, supra.* Recog-

nizing the congressional mandate that the Board's rules and regulations preempt state law with respect to the internal affairs of federal savings and loan associations, the Board's regulatory actions take precedence over any state law that might otherwise apply in these areas. As expressed in *Beverly Hills Savings and Loan Ass'n. v. Federal Home Loan Bank Board,* 371 F.Supp. 306, 313 (C.D.Cal.1973):

> . . . the [state's] attempted imposition of potentially conflicting and inconsistent regulations on the operation of a federally chartered savings and loan association would intrude upon the comprehensive regulatory scheme established by the Board and, hence, was contrary to the manifest purpose and intent of the Act. *People v. Coast Federal Sav. & Loan Ass'n,* supra, thus, stands for the exclusivity of federal regulation over federally chartered savings and loan associations.

### FEDERAL COMMON LAW

■ To the extent either that the Board's formal policy statements covering conflict of interest and corporate opportunity were effectuated after the defendant directors and officers allegedly began violating their fiduciary obligations to the associations, or that the policy statements do not cover all aspects of the subject matter, defendants assert that the court must fashion and apply federal common law. The consistency and universality inherent in applying a single federal standard to the federal savings and loan system, whether it be statutory, regulatory or derived from federal common law, is in keeping with the underlying objective of the HOLA, which contemplates a uniform set of policies for federally chartered associations which does not vary with quirks of local law. *Murphy v. Colonial Federal Savings & Loan Association,* supra; *North Arlington National Bank v. Kearney Federal Savings & Loan Ass'n.,* 187 F.2d 564 (3d Cir. 1951) *cert. denied,* 342 U.S.

816, 72 S.Ct. 30, 96 L.Ed. 617; *California v. Coast Federal Savings & Loan Ass'n., supra.* Even as a policy matter, it is clearly preferable to have federal law apply to the management practices of federally chartered associations.

■ Since only the Board may regulate or supervise the internal affairs of the defendant associations precluding any state interference and the fiduciary duties of directors and officers of federal savings and loan associations are matters relating to the internal affairs of the associations, *City Federal Savings and Loan Association v. Crowley, supra,* 393 F.Supp. at 655, only federal law may be applied to questions involving them. *Murphy v. Colonial Federal Savings & Loan Association, supra; City Federal Savings and Loan Association v. Crowley, supra.* This is true even where the directors' conduct is not specifically proscribed by any specific regulation of the Board. In such a case, the court may rely upon federal common law to fill out the framework of the Board's regulatory scheme.

In this regard, *Beverly Hill Savings and Loan Ass'n v. Federal Home Loan Bank Board,* 371 F.Supp. 306 (C.D.Cal. 1973), is particularly in point. In that case, directors of a federal association were charged, *inter alia,* with breach of their fiduciary duties. The court found that, although no express regulation of the Board covered the alleged misconduct, the federal regulatory scheme embraced "fundamental principles of the common law consistent with the policies of the regulatory scheme and necessary for its implementation." *Supra* at 314. It further recognized, citing Mr. Justice Jackson's concurring opinion in *D'Oench, Duhme & Co. v. Federal Insurance Deposit Corp.,* 315 U.S. 447 at 471–472, 62 S.Ct. 910, 86 L.Ed. 1224, that although a court may in appropriate circumstances resort to state law for guidance,

> . . . in the last analysis its decision turns upon the law of the United States, not that of any state. Federal

law is no judicial chameleon changing complexion to match that of each state wherein lawsuits happen to be commenced because of the accidents of service of process and the venue statutes. It is found in the federal Constitution, statutes, or common law. Federal common law implements the federal Constitution and statutes, and is conditioned by them. Within these limits, federal courts are free to apply the traditional common law technique of decision and to draw upon sources of the common law in cases such as the present. *Supra,* 371 F.Supp. at 314.

The district court, applying Federal common law, concluded at 314:

> . . . the duties and responsibilities imposed upon fiduciaries and those in positions of trust by generally accepted and applied common law principles are implicit in the Act [HOLA] and the regulations promulgated thereunder by the agency responsible for enforcement and implementation of the Act. A similar result was most recently reached in *City Federal Savings and Loan Association v. Crowley* wherein the court found that "[t]he federal common law governing the internal affairs of federal savings and loan associations includes the usual common law fiduciary duties." *Supra,* 393 F.Supp. at 656.

■ The plaintiffs contest the applicability of federal common law, relying principally upon the *Erie R. Co. v. Tompkins,* doctrine. In support, plaintiffs cite *Wheeldin v. Wheeler,* 373 U.S. 647, 651, 652, 83 S.Ct. 1441, 1445, 10 L. Ed.2d 605 (1963), which held:

> As respects the creation by the federal courts of common-law rights, it is perhaps needless to state that we are not in the free-wheeling days antedating *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The instances where we have created federal common law are few and restricted. . . . When it comes to suits for damages for abuse of power, federal officials are usually governed by local law.

Plaintiffs' argument was expressly rejected in *City Federal Savings and Loan Association v. Crowley, supra,* 393 F. Supp. at 654, which concluded that "the rule of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), does not apply to issues arising from and having a bearing on a federal regulatory program, and in such a case the federal courts have the competence to choose a state rule of law or create a federal one."

Nor do we find merit in the plaintiffs' conclusory and unsupported statement that permitting the various states to pass on questions of directors' fiduciary obligations will have little disruptive effect on the federal savings and loan system. It certainly and inevitably will preclude the uniformity which Congress clearly intended and will permit directors of federal associations to do in one state what they may not do in others.

In conclusion, we find that Congress intended federal law to pre-empt the area of directors' and officers' fiduciary duties, and that, by virtue of the HOLA, the Board's regulations and policy statements, and federal common law, original federal jurisdiction has been established within the meaning of the federal removal statute, 28 U.S.C. § 1441. Defendants are accordingly entitled to remove to this court and plaintiffs' motions to remand will be denied.

An order consistent with the foregoing will enter.