**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF BOSTON et al., Plaintiffs, Appellees,**

v.

**Carol S. GREENWALD, etc., Defendant, Appellant.**

**No. 78–1155.**

United States Court of Appeals, First Circuit.

Argued Sept. 6, 1978.

Decided Feb. 5, 1979.

Terence P. O'Malley, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and S. Stephen Rosenfeld, Asst. Atty. Gen., Boston, Mass., were on brief, for appellant.

Evelle J. Younger, Atty. Gen., Arthur C. DeGoede, Asst. Atty. Gen., Joseph M. O'Heron and W. Gary Kurtz, Deputy Attys. Gen., Los Angeles, Cal., on brief, for State of California, amicus curiae.

Steven J. Toll, Atty., Washington, D. C., with whom Anne P. Jones, Gen. Counsel, Boston, Mass., Harold B. Shore, Associate Gen. Counsel, and Harvey Simon, Asst. Gen. Counsel, Washington, D. C., were on brief, for appellee, Federal Home Loan Bank Board.

William F. McKenna, Washington, D. C., with whom Aaron M. Peck, G. Howden Fraser, Daniel H. Willick, Los Angeles, Cal., McKenna & Fitting, Washington, D. C., Carlton W. Spencer, and Spencer & Stone, Boston, Mass., were on brief, for appellees, Federal Savings and Loan Associations.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

On October 18, 1976, the Massachusetts Commissioner of Banks commenced a civil action in the Supreme Judicial Court of Massachusetts against the First Federal Savings and Loan Association of Boston (First Federal), a federally-chartered lender which engages in mortgage transactions in Massachusetts. The Commissioner sought declaratory and injunctive relief regarding the interpretation and enforcement of Mass.Gen.Laws c. 183, § 61, which requires mortgagees to pay interest on certain tax escrow accounts and to file informational reports concerning such accounts.[1] Sued as a representative party on behalf of all federally-chartered savings and loan associations in Massachusetts, First Federal was described in the complaint as,

" . . . a mortgagee under G.L. c. 183, § 61 and . . . a lender which is

---

1. Mass.G.L. c. 183, § 61 provides:

"A mortgagee doing business in the Commonwealth and holding a first mortgage or lien on a dwelling house of four or fewer separate households occupied or to be occupied in whole or in part by the mortgagor who requires advance payments, deposits or other security by said mortgagor for the payment of real estate taxes on mortgaged property, shall pay interest to said mortgagor on any amounts so paid or deposited in advance. Interest shall be paid at least once a year at a rate and in a manner to be determined by the mortgagee.

"Mortgagees required to pay such interest shall file annually with the commissioner of banks a statement showing the amount of net profit or loss from the investment of said deposits. Mortgagees showing a net loss from these investments may file with said commissioner a request for an exemption from the requirement that interest be paid to mortgagors. The commissioner shall maintain as a public record an annual report of interest rates paid to mortgagors as required by this section during the preceding annual period. The report shall list the mortgagees granted exemptions under this section during the preceding annual period."

regulated by an agency of the federal government as that phrase is employed in the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §§ 2601 et seq."

The complaint charged that notwithstanding notification of the requirements of Mass.G.L. c. 183, § 61,[2] First Federal refused to make the filings requested by the Commissioner. It alleged that the Massachusetts statute requires more than did a federal regulation, 12 C.F.R. § 545.6–11(c), that "relate[s] in part to the payment of interest on tax escrow accounts,"[3] and "which [is] designed to conform with § 10 of the Real Estate Settlement Procedures Act of 1974," 12 U.S.C. § 2609 (RESPA).[4] Specifically, the complaint stated,

"a) § 61 requires the filing of annual reports; § 545.6–11 does not;

b) § 61 applies to dwelling houses of four or fewer separate households; § 545.6–11 applies only to single family dwellings;

c) § 61 applies to deposits on all present outstanding loans; § 545.6–11 applies only to deposits on loans made after June 16, 1975."

Thus, according to the Commissioner's complaint, "[i]nsofar as the state law requirements differ from those of federal law, First Federal has not met those requirements."

The complaint went on to insist that compliance with the federal regulations on the payment of interest on tax escrow accounts does not satisfy the requirements of state law, and that the state statute was not preempted by federal law. Indeed, it alleged that the Massachusetts statute is explicitly recognized as valid by § 18 of RESPA, 12 U.S.C. § 2616, which provides that any state law with respect to settlement practices that gives protection to the consumer greater than that provided by federal law shall not be deemed inconsistent with RESPA.[5] The Commissioner prayed that

---

**2.** It is undisputed that by letter dated June 18, 1976, the Commissioner notified all mortgagees in the Commonwealth, including First Federal, of the interest and reporting requirements of Mass.G.L. c. 183, § 61. Attached to the letter was a form to be completed and filed with the Commissioner. Neither First Federal nor apparently any of the other savings and loan associations has complied with those state statutory requirements.

**3.** 12 C.F.R. § 545.6–11(c) provides,

"(c) *Payment of interest on escrow accounts.* A Federal association which makes a loan on or after June 16, 1975 on the security of a single-family dwelling occupied or to be occupied by the borrower (except such a loan for which a bona fide commitment was made before that date) shall pay interest on any escrow account maintained in connection with such a loan (1) if there is in effect a specific statutory provision or provisions of the State in which such dwelling is located by or under which State-chartered savings and loan associations, mutual savings banks and similar institutions are generally required to pay interest on such escrow accounts, and (2) at not less than the rate required to be paid by such State-chartered institutions but not to exceed the rate being paid by the Federal association in its regular accounts (as defined in § 526.1 of this chap-

ter). Except as provided by contract, a Federal association shall have no obligation to pay interest on escrow accounts apart from the duties imposed by this paragraph."
This regulation was promulgated by the Federal Home Loan Bank Board pursuant to its authority over federal savings and loan associations under the Home Owners' Loan Act, 12 U.S.C. § 1464(a). See note 12 *infra.*

**4.** RESPA § 10 limits the amount that a borrower can be required to deposit in advance in a tax escrow account in connection with a federally-related mortgage loan.

**5.** The Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–17, was enacted by Congress in 1974 to regulate real estate settlement processes. Its essential purpose is to provide consumers with greater information and to protect them from certain abusive practices. Section 18 of the Act, 12 U.S.C. § 2616, provides,
"This chapter does not annul, alter, or affect, or exempt any person subject to the provisions of this chapter from complying with, the laws of any State with respect to settlement practices, except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency. The Secretary is authorized to determine whether such inconsistencies exist. The Secretary may not de-

the federal associations be compelled to comply with G.L. c. 183, § 61.

On October 29, 1976, First Federal removed the case to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1441(b).[6] First Federal justified removal on the ground that the action was one over which the district court had original federal question jurisdiction under 28 U.S.C. §§ 1331 and 1337, in that it would involve "the construction, interpretation and application of federal statutes, specifically [12 U.S.C. §§ 1464, 2616, and 12 C.F.R. § 545.6–11]." The Commissioner on November 23, 1976, moved to remand the case to the Massachusetts Supreme Judicial Court. The district court denied the motion on February 23, 1977, in conformity with a magistrate's conclusion that the district court had original jurisdiction under 28 U.S.C. §§ 1331 and 1337.

While the remand issue was being resolved, the litigation proceeded. First Federal filed an answer to the Commissioner's complaint in the district court on November 9, 1976. The bank asserted that it had complied with 12 C.F.R. § 545.6–11, but had not complied with the requirements of the Massachusetts statute "to the extent such state law is not required to be followed by [the federal regulation]." First Federal contended that "certain provisions" of the Massachusetts statute were not applicable to it, and that the Massachusetts statute is not recognized by RESPA as being valid. First Federal also raised four affirmative defenses: (1) that the Commissioner failed to state a claim upon which relief can be granted; (2) that the Commissioner failed

to join as a party defendant the Federal Home Loan Bank Board (Bank Board), which allegedly was "the real party defendant in interest . . . or . . . an indispensable party defendant"; (3) that federal regulations promulgated by the Bank Board totally occupy the field of regulation of the practices and procedures of federal savings and loan associations relating to the establishment, maintenance and payment of interest on escrow accounts; and (4) that those portions of Massachusetts G.L. c. 183, § 61 that the Commissioner seeks to enforce conflict with the federal regulations and thus are inapplicable, by virtue of the Supremacy Clause, to federal savings and loan associations.

First Federal along with its answer filed a counterclaim against both the Commissioner and the Bank Board.[7] The amended counterclaim sought declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, to resolve the conflicting positions of the Commissioner and the Bank Board regarding First Federal's obligation to pay interest on escrow accounts as required by the Massachusetts statute.

In addition to the counterclaim against the Commissioner and the Bank Board, on January 11, 1977 First Federal and the other Massachusetts savings and loan associations instituted in the district court a separate civil action against the Commissioner and the Bank Board. Paralleling First Federal's counterclaim in the removed suit, the new action sought an adjudication under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, of the conflicting positions of the Commissioner and the Bank Board.

termine that any State law is inconsistent with any provision of this chapter if the Secretary determines that such law gives greater protection to the consumer. In making these determinations the Secretary shall consult with the appropriate Federal agencies."

**6.** 28 U.S.C. § 1441(b) provides,
"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution,

treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

**7.** The Bank Board was joined pursuant to Fed. R.Civ.P. 13(h).

Jurisdiction was premised on 28 U.S.C. §§ 1331 and 1337. The Commissioner moved on March 21, 1977 to stay proceedings in this second action because of the pendency of the first action involving the same issues, but ten days later she withdrew the stay motion, filed an answer, and agreed to consolidate the two proceedings for hearing in the district court. All parties then moved for summary judgment under Fed.R.Civ.P. 56.

The district court issued a memorandum opinion ruling that Mass.G.L. c. 183, § 61 violates the Supremacy Clause when applied to federally-chartered savings and loan associations. It reasoned both that federal law preempts the field of interest payments on escrow accounts by the federal associations and that the Massachusetts statute directly conflicts with 12 C.F.R. § 545.6–11. The court viewed RESPA § 18 as inapplicable to the case, because there has been no determination by the Secretary of Housing and Urban Development that the Massachusetts law affords greater consumer protection than 12 C.F.R. § 545.6–11(c) and because the payment of interest on escrow accounts is not a "settlement practice," as defined in RESPA, § 3, 12 U.S.C. § 2602.

The district court issued an order in each of the two cases granting First Federal's and the Bank Board's motions for summary judgment and denying the Commissioner's. The order in the Declaratory Judgment Act action declared that Massachusetts G.L. c. 183, § 61 "is inapplicable to and need not be complied with by federally-chartered savings and loan associations located in Massachusetts."

On appeal the Commissioner argues, first, that the federal district court erred in refusing to remand to the state court, as it lacked subject matter jurisdiction over the Commissioner's removed action; second, that the district court should have abstained from adjudicating the associations' declaratory judgment action, because but for the district court's erroneous assumption of jurisdiction the same issues would have been before the state court at the time the associations' action was filed; and third, that even if the district court did properly reach the merits, it erred in ruling Mass. G.L. c. 183, § 61 to be inapplicable to federal savings and loan associations by virtue of preemption.

I.

■ The district court held that there was removal jurisdiction over the Commissioner's state action, on the ground that it arose under federal law because federal law had preempted the area of the payment of interest on real estate tax escrow accounts. We need not and do not pass on this determination, because we hold *infra* that the district court could decide the merits of the present controversy on the basis of the associations' federal declaratory judgment action even if the Commissioner's own action belonged in the state court.

We observe in passing that resolution of the jurisdictional issue with respect to the Commissioner's action does not appear to be as simple as the district court may have believed and as common sense alone might suggest. While the Commissioner's claim turns ultimately on the federal question of preemption, it is, narrowly construed, only a claim to enforce the Massachusetts interest law. Arguably it fails to meet the requirement for federal question jurisdiction that a federal right be an essential element of the cause of action, *Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936). To be sure, the Commissioner's complaint cites to a federal statute, RESPA § 18, as allowing state interest regulation. But RESPA seems material only to offset the defense of federal preemption, and, therefore, it could be that the federal question does not adequately appear from the "well-pleaded" complaint, *see id.* at 113, 116, 57 S.Ct. 96; *Pan American Petroleum Corp. v. Superior Court*, 366 U.S. 656, 663–64, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961). Many courts have ruled federal preemption

to be a matter of defense to a state law claim and therefore incapable of providing the basis for federal question jurisdiction. *E. g., Home Federal Savings & Loan Association v. Insurance Department*, 571 F.2d 423, 426–27 (8th Cir. 1978); *Washington v. American League of Professional Baseball Clubs*, 460 F.2d 654, 660 (9th Cir. 1972); *Johnson v. First Federal Savings & Loan Association*, 418 F.Supp. 1106, 1109 (E.D. Mich.1976). On the other hand, some circuits have taken a broader view of federal question jurisdiction, namely that "[e]ven though the claim is created by state law, a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of such a law," *T. B. Harms Co. v. Eliscu*, 339 F.2d 823, 827 (2d Cir. 1964) (Friendly, J.), *citing Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *accord, Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974). And in the situation here presented, a number of courts have ruled that if federal law preempts the state law on which an action is purportedly based, the action may be removed to federal court. *E. g., Rettig v. Arlington Heights Federal Savings & Loan Association*, 405 F.Supp. 819, 822–23 (N.D.Ill.1975); *see Meyers v. Beverly Hills Federal Savings & Loan Association*, 499 F.2d 1145 (9th Cir. 1974); *North Davis Bank v. First National Bank*, 457 F.2d 820 (10th Cir. 1972).

It is clear from the foregoing that the removal issue is not easy. Given this uncertainty, and the fact that this case may be decided without resolving the issue, we prefer not to resolve it. The question is not essential to decision here because even if removal of the Commissioner's action were improper, the district court clearly had jurisdiction over the associations' separate de-

claratory judgment action which involved the same issues and was consolidated with the Commissioner's action for hearing and decision. The matter of preemption and related federal issues were the focal point of the declaratory judgment suit, hence federal question jurisdiction existed in that case under any analysis.[8] True, the declaratory suit is a sufficient predicate only if the federal court was not required to abstain; but for reasons we next discuss, we find the Commissioner's abstention argument to be entirely without merit.

## II.

■ We turn now to the Commissioner's abstention argument, which is based on the supposition that the district court erred in not remanding the Commissioner's action. The Commissioner argues that had her action properly remained in the Massachusetts court rather than being, as she says, improvidently removed, the district court would have had to abstain from the associations' declaratory judgment action, because the Commissioner's action involving the same federal issue of preemption would have been pending in state court at the time the associations' action was filed. We disagree. Even if we assume that the removal had been improper, we do not believe that abstention would have been required.

■ The Commissioner argues in support of her position that *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), and *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), require a federal court to abstain from an action seeking declaratory relief whenever the Anti-Injunction Act would bar an injunction. That Act provides,

---

**8.** The associations' declaratory judgment action raises more than a mere defense to the Commissioner's action. *See generally Public Service Comm'n v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952). Both the state and federal regulations are currently in effect, subjecting the associations to conflicting requirements, *see infra*, which would have presented a justiciable controversy even if the

declaratory suit had been brought prior to the Commissioner's enforcement action, *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506–08, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). It therefore has a vitality of its own and may be maintained. *Rath Packing Co. v. Becker*, 530 F.2d 1295, 1305–06 (9th Cir. 1975), *aff'd sub nom. Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

28 U.S.C. § 2283. The Commissioner contends simply that because none of the three exceptions outlined in § 2283 obtain in this case, abstention is required. That analysis misapprehends the *Great Lakes* and *Samuels* cases, however. Rather than making the precise scope of the Act's prohibitions of injunctions applicable also to declaratory relief, those cases state that the withholding of federal declaratory relief because of pending state proceedings is to be governed by "traditional equitable principles." *Samuels v. Mackell*, 401 U.S. at 70, 91 S.Ct. 764. *See generally United States v. State Tax Commission*, 481 F.2d 963, 972–73 (1st Cir. 1973).

■ In any event, whether governed by the Act or by "traditional equitable principles," this case is not an appropriate one for abstention because the Bank Board, a federal agency, is a party to the declaratory judgment action and is asserting "superior federal interests" therein. A federal court may enjoin state judicial proceedings, notwithstanding the Anti-Injunction Act, "when the plaintiff in the federal court is the United States itself, or a federal agency asserting 'superior federal interests,'" *Mitchum v. Foster*, 407 U.S. 225, 235–36, 92 S.Ct. 2151, 2159, 32 L.Ed.2d 705 (1972), *citing NLRB v. Nash-Finch Co.*, 404 U.S. 138, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971); *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957). The Supreme Court in both *Leiter Minerals*, 352 U.S. at 225–26, 77 S.Ct. 287, and *Nash-Finch*, 404 U.S. at 145, 92 S.Ct. at 377, stated the reason behind this exception:

"The [anti-injunction] statute is designed to prevent conflict between federal and state courts. This policy is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than when it is the United States which seeks a stay to prevent threatened irreparable injury to a national interest. The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings except under the severe restrictions of 28 U.S.C. § 2283 would be so great that we cannot reasonably impute such a purpose to Congress from the general language of 28 U.S.C. § 2283 alone."

The policy underlying this judicially-created exception to the Anti-Injunction Act applies as well, and indeed with greater force, to make abstention under general equitable principles inappropriate where a federal agency is asserting "superior federal interests." *See United States v. State Tax Commission*, 481 F.2d at 975.

It is true that the Bank Board is not a plaintiff in the declaratory judgment action, but rather was joined as a defendant along with the Commissioner. Despite that posture, however, the Bank Board has actively asserted its position that federal law, including its own regulations, exclusively governs the legal obligation of federally-chartered savings and loan associations to pay interest on escrow accounts. It has challenged the Commissioner's effort to enforce the Massachusetts statute in both its answer and its motion for summary judgment. There can be no doubt that the Bank Board is asserting what it perceives to be "superior federal interests" in the declaratory judgment action. In this situation, the rationale of *Nash-Finch* and *Leiter Minerals* applies as well as if the Bank Board had brought its own lawsuit. *Accord, Sobol v. Perez*, 289 F.Supp. 392, 399–400 (E.D.La. 1968).

■ While the foregoing is dispositive of the abstention issue, we also observe that the Commissioner is in a poor position, equitably, to seek abstention. At the proceeding below she failed to press for abstention, or even raise that issue. While she did move to stay the proceedings pending resolution of the Commissioner's previously-filed action, that motion was made after the district court denied the motion to remand,

was based on "the interests of judicial economy and efficiency"—with no mention of the abstention doctrine, and was subsequently withdrawn without explanation. The Commissioner's actions came close to waiving, if they did not actually waive, any claim that the district court should abstain.[9] To have to send this already-decided case to another tribunal at this juncture would, especially under these circumstances, be an unwarranted waste of resources. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 126, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

As abstention would have been inappropriate even assuming removal was improper, we turn to the merits of the case.

### III.

The Supremacy Clause[10] requires the invalidation of any state law that either falls within an area exclusively occupied by federal law or actually conflicts irreconcilably with a federal law. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157–58, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *see DeCanas v. Bica*, 424 U.S. 351, 356–65, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). We think that Mass.G.L. c. 183, § 61, as applied to federal savings and loan associations, actually conflicts with 12 C.F.R. § 545.6–11(c) and therefore is preempted.[11] We accordingly find no need to inquire whether the Home Owners' Loan Act and the Bank Board's regulations have "occupied the field," precluding all state regulation of federal savings and loan associations.[12]

The Home Owners' Loan Act grants to the Bank Board broad regulatory authority over the operation of federal savings and loan associations.[13] Pursuant to this authority, the Bank Board has issued detailed regulations governing the "operations of every Federal savings and loan association from its cradle to its corporate grave." *California v. Coast Federal Savings & Loan Association*, 98 F.Supp. 311, 316 (S.D.Cal. 1951); *see Kupiec v. Republic Federal Savings & Loan Association*, 512 F.2d 147, 149 (7th Cir. 1975). One such regulation is 12 C.F.R. § 545.6–11(c), which specifies the conditions under which the federal associations must pay interest on escrow accounts. The regulation also provides, "Except as provided by contract, a Federal association shall have no obligation to pay interest on escrow accounts apart from the duties imposed by this paragraph."[14] The Massachusetts statute, Mass.G.L. c. 183, § 61, if applicable to the federal associations, would impose on them greater interest requirements than § 545.6–11(c) and would impose reporting requirements as well.[15]

It is manifest that application of the Massachusetts requirements to federal savings and loan associations would contradict the Bank Board's regulation. That regulation requires federal savings and loan associa-

---

**9.** We do not mean to suggest that questions of abstention will never be considered for the first time on appeal. *See Ortega Cabrera v. Municipality of Bayamon*, 562 F.2d 91, 97 n.3 (1st Cir. 1977). But we do not think it improper, given the equitable nature of abstention, to take into account the proponent's failure to bring the issue to the lower court's attention where the argument is not clearly suggested by the circumstances. *See Bellotti v. Baird*, 428 U.S. 132, 143 n.10, 96 S.Ct. 2857, 42 L.Ed.2d 844 (1976); *Ortega Cabrera*, 562 F.2d at 97 n.3.

**10.** U.S.Const. art. 6, cl. 2.

**11.** That 12 C.F.R. § 545.6–11(c) is a federal regulation rather than a federal statute does not negate its preemptive effect. *See Free v. Bland*, 369 U.S. 663, 667–68, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962); *Ray v. Atlantic Richfield Co.*, 435 U.S. at 160–68, 98 S.Ct. 988.

**12.** *See* note 16, *infra*.

**13.** 12 U.S.C. § 1464(a) provides:
"In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations', and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States."

**14.** *See* note 3 *supra*.

**15.** *See* note 1 *supra*.

tions to make interest payments only on escrow accounts relating to single family dwellings and involving loans made after June 16, 1975. The regulation also expressly directs that its interest requirements are exclusive. The Massachusetts statute would require the federal associations to pay interest on many more accounts: those relating to two-, three-, and four-family dwellings and seemingly those relating to loans made before June 16, 1975. In addition, the Massachusetts statute's reporting requirement would be a burden incidental to the payment of interest beyond what the Bank Board requires. Because the Massachusetts statute imposes significantly greater interest requirements than the Bank Board's explicitly exclusive requirements, the state and federal schemes necessarily conflict. We therefore conclude that Mass. G.L. c. 183, § 61's applicability to federal savings and loan associations is preempted by federal law.[16]

■ The Commissioner argues that RESPA § 18, 12 U.S.C. § 2616, undermines the preemptive effect of 12 C.F.R. § 545.6–11(c). The argument is that § 2616 affirmatively "permits the operation of state laws regulating settlement practices except as they are inconsistent with RESPA," that the payment of interest on escrow accounts is a "settlement practice," and that therefore § 2616 affirmatively permits state statutes such as Mass.G.L. c. 183, § 61. Since a federal statute affirmatively permits the Massachusetts interest requirements, the argument goes, a Bank Board regulation cannot invalidate the state law.

The Commissioner reads § 2616 far too broadly. On its face § 2616 only states that "*This chapter* does not annul, alter, or af-

fect, or exempt any person [from] the laws of any State with respect to settlement practices . . . ." [Emphasis added]. Thus, § 2616 relates solely to the preemptive effect of 12 U.S.C. ch. 27, which consists only of RESPA. Section 2616's scope does not extend to 12 C.F.R. § 545.6–11(c), as it was promulgated by the Bank Board pursuant to the Home Owners' Loan Act, 12 U.S.C. § 1464(a), and not pursuant to RESPA.

*Affirmed.*

---

16. We note that a number of courts have ruled certain state regulations of federal savings and loan associations to be preempted because the Home Owners' Loan Act and the Bank Board's regulations "occupy the field," either the entire field of regulation of the associations or some particular aspect thereof. *Meyers v. Beverly Hills Fed. Sav. & Loan Ass'n*, 499 F.2d 1145; *Rettig v. Arlington Heights Fed. Sav. & Loan Ass'n*, 405 F.Supp. at 823–24; *City Fed. Sav. & Loan Ass'n v. Crowley*, 393 F.Supp. 644, 655 (E.D.Wis.1975); *California v. Coast Fed. Sav. & Loan Ass'n*, 98 F.Supp. at 318–20; *Kaski v. First Fed. Sav. & Loan Ass'n*, 72 Wis.2d 132, 240 N.W.2d 367 (1976). *Contra, Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Ass'n*, 281 Or. 533, 577 P.2d 477 (1978), *cert. denied, —— U.S. ——, 99 S.Ct. 733, 59 L.Ed.2d —— (1978). Because we find preemption on the narrower basis of a conflict between state and federal law, we express no view as to these decisions.