558 F.2d 727
 Lawrence A. UZZELL and Robert Lane Arrington, Individually,
and upon behalf of all others similarly situated, Appellants,
v.
William C. FRIDAY, Individually, and as President of the
University of North Carolina, Ferebee Taylor, Individually
and as Chancellor, Claiborne Jones, Individually and as
Vice-Chancellor, Marcus Williams, President of Student Body,
Timothy Dugan, Individually and Treasurer, etc., Board of
Trustees of the University of North Carolina at Chapel Hill,
and Board of Governors of the University of North Carolina,
and Algenon L. Marbley, Chairman of the Black Student
Movement, and Robert L. Wynn, II, Vice-Chairman of Black
Student Movement, Appellees.
 No. 75-2276.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 8, 1977.
Decided July 28, 1977.
 
 Hugh J. Beard, Jr., Charlotte, N. C., for appellants.
 Andrew A. Vanore, Jr., Senior Deputy Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen., North Carolina, Raleigh, N. C., on brief), for appellees.
 Karen Bethea Galloway, James V. Rowan, Paul, Rowan & Galloway, Durham, N. C., on brief for defendant-intervenors.
 Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and WINTER, BUTZNER, RUSSELL, WIDENER and HALL, Circuit Judges.
 OPINION ON REHEARING IN BANC
 ALBERT V. BRYAN, Senior Circuit Judge:
 
 
 1
 Upon rehearing in banc, the opinion heretofore filed in this appeal, 547 F.2d 801 (4 Cir. 1977), is confirmed with two additions:
 
 
 2
 (1) A statement will be included in Section II of the opinion, as it appeared in the first order denying a panel rehearing, viz, that after the decision of the District Court but before this appeal came on for argument the Student Constitution provision for appointment by the President of the Student Body, with the consent of the Campus Governing Council, of up to two members of the minority race as Councillors, in the event that the annual election had secured Council office for fewer than two such members, had been invoked and satisfied by appointment of a black student as a Councillor.
 
 
 3
 (2) To the citations at 547 F.2d at 803, line 10, will be added that of Carter v. Jury Commission of Greene County, 396 U.S. 320, 329, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970), for the point that plaintiffs herein have standing to sue.
 
 
 4
 The Clerk is now directed to enter an order affirming the panel decision, 547 F.2d at 801, subject to the additions noted above, and reversing and remanding the judgment of the District Court consistent with that decision.
 
 
 5
 WINTER, Circuit Judge, with whom HAYNSWORTH, Chief Judge, and BUTZNER, Circuit Judge, join, concurring and dissenting:
 
 
 6
 I would affirm the order of the district court in its entirety, for the reasons sufficiently stated in the district court's opinion. Uzzell v. Friday, 401 F.S. 775 (M.D.N.C.1975).
 
 I.
 
 7
 I agree with the majority that the district court cannot be faulted for concluding that the issue of university funding of the Black Student Movement is moot.
 
 
 8
 As to the issue of the validity of the university regulations which allow the student body president to appoint two black members to the Campus Governing Council if two have not been elected, I think that plaintiffs lack standing to sue because there is no actual or threatened injury to them. They have not been threatened with loss of representation as whites. They have not been denied the right to vote; nor has the weight of their vote been diluted. They have not been denied the right to seek election and to win. The fact that potential black appointees may cast the deciding vote on a close issue before the Council, in derogation of plaintiffs' interests, is too remote and speculative for serious consideration.
 
 
 9
 Finally, as to the issue of the validity of the regulation permitting an accused before the Honor Court to request that a majority of the judges reflect his race and sex (white, black, male, or female), I think that plaintiffs have failed to establish standing to sue and have failed to show a case or controversy, i. e. an actual dispute reflecting competing interests. This regulation does not discriminate; any student may request majority representation of that student's race and sex. Surely a non-offender, of a race or sex different from the accused, has no right or privilege to insist that the accused be judged by less than the peers of the accused. Conversely in a geographical area where racial discrimination has been known, the university has an interest in the appearance of justice, as well as justice in fact.
 
 II.
 
 10
 On the merits of the case, I and some of my brothers are outvoted. This is understandable, but what is totally inexplicable is that the majority rushes to final judgment without affording the defendants either their rights under Rule 56, F.R.Civ.P., or elemental procedural due process of law.
 
 
 11
 When defendants moved for summary judgment, they did so on the grounds that plaintiffs' claims were moot, that plaintiffs' claims failed to establish a case or controversy, that plaintiffs had failed to exhaust their administrative remedies and that the plaintiffs lacked standing to sue. Defendants did not assert that on the merits they were entitled to summary judgment and plaintiffs made no such claim either. Indeed, even before us, plaintiffs ask only that we vacate the judgment of the district court "and remand this case for trial upon the merits."
 
 
 12
 Of course, in a proper case, a trial court may render a summary judgment against a party who has moved for summary judgment in his favor, even though the opposing party, to whom summary judgment is granted, did not file a cross motion. And I do not dispute that an appellate court, in a proper case, may do the same thing. But this is not a proper case in which the power we possess should be exercised.
 
 
 13
 In the record before us, there was some general discovery by way of requests for admissions, answers to interrogatories and production of documents, but I do not read them to tell the whole story of the history of discrimination or non-discrimination at the university, the need for remedial measures, the reasonableness of the measures and how, in practice, they have operated. I think that these are all factors bearing on the ultimate merits. Certainly the parties, as well as the district court, did not and do not treat the record as complete for purposes of final adjudication on the merits. Even if the majority thinks otherwise, I suggest that in the sensitive, expanding area of the law of racial discrimination, the majority should recognize that it is not unlikely that the majority's view of the merits may not be the final say and that in equity and good conscience, the parties should be given the opportunity to make the record on which they must stand or fall.
 
 
 14
 Until it reached us, the case was litigated and decided on procedural or preliminary grounds not dispositive of the merits. By converting the case into a final adjudication on the merits when neither party contemplated or requested it and when neither party has had the opportunity to present any additional relevant proof, the majority denies to the losing party, as well as the party prevailing, the very rights that we have assiduously preserved for uncounseled litigants in summary judgment actions, Roseboro v. Garrison, 528 F.2d 309 (4 Cir. 1975) fair notice and an opportunity to respond. The majority thus violates Rule 56 and denies procedural due process of law. Surely the parties, including the State of North Carolina, deserve fairer treatment.
 
 
 15
 From the majority's partial reversal, I respectfully dissent.