**GLENDALE FEDERAL SAVINGS AND LOAN ASSOCIATION, a federally chartered association, Plaintiff,**

v.

**David H. FOX, etc., et al., Defendants.**

**FEDERAL HOME LOAN BANK BOARD, Cross-Claimant,**

v.

**Richard T. SILBERMAN, as Secretary of the Business and Transportation Agency of the State of California, Cross-Claim Defendant.**

**No. CV 77–3274–WMB.**

United States District Court, C. D. California.

June 20, 1979.

As Amended June 26 and Oct. 17, 1979.

---

618

Evelle J. Younger, Atty. Gen., Joseph M. O'Heron, W. Gary Kurtz, Deputy Attys. Gen., Los Angeles, Cal., for plaintiff.

McKenna & Fitting, G. Howden Fraser, Terry O. Kelly, Los Angeles, Cal., for defendants.

## ORDER

WM. MATTHEW BYRNE, Jr., District Judge.

A "due-on-sale" clause in a loan instrument provides the lender an option to declare immediately due and payable all of the sums owed to the lender if all or any part of the real property securing the loan is sold or otherwise transferred by the borrower without the lender's prior consent.[1] This action involves the question whether state regulation of the validity and exercisability of due-on-sale clauses contained in the loan instruments of federal savings and loan associations executed after June 8, 1976, is preempted by federal law.

## I.  BACKGROUND

Plaintiff, Glendale Federal Savings and Loan Association ("Glendale Federal"), is a federally chartered savings and loan association organized and operating under the Home Owners' Loan Act of 1933, as amended, 12 U.S.C. Section 1461, *et seq.* (hereinafter "HOLA").  The Federal Home Loan Bank Board ("the Bank Board") defendant and cross-claimant, is an independent agency of the United States in the Executive Branch, 12 U.S.C. Section 1437(b), which, under authority delegated by Congress through Section 5(a) of the HOLA, is responsible for the chartering, examining, supervision, and regulation of federal savings and loan associations.  12 U.S.C. § 1464(a).[2]

The Bank Board has promulgated regulations specifying the provisions which a federal savings and loan association shall and

---

1.  *See* 12 C.F.R. § 545.6–11(f), *infra.*

2.  Section 1464(a) of Title 12, United States Code, provides:

"In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations', and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States."

may include in its loan contracts. 12 C.F.R. § 545.6–11. With respect to the use of due-on-sale clauses by federal savings and loan associations the Bank Board, in April, 1976, adopted certain amendments specifically authorizing the use of such clauses and prescribing certain limitations on their exercise. 12 C.F.R. § 545.6–11(f) & (g). These regulations, which became effective June 8, 1976, state in pertinent part:

"A federal association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instruments whereby the association may, at its option, declare immediately due and payable all of the sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as provided in paragraph (g) of this section . . . exercise by an association of such an acceleration option (hereafter called a due-on-sale clause) shall be governed exclusively by the terms of the contract between the association and the borrower . . ." 12 C.F.R. § 545.6–11(f).[3]

Defendants Fox, DeClercq, and Silberman (hereafter "state defendants") are, respectively, the Real Estate Commissioner of the State of California, a Deputy Real Estate Commissioner of the State of California, and the Secretary of the Business and Transportation Agency of the State of California. California real estate law requires that the Commissioner of Real Estate examine any proposed "subdivision,"[4] and, unless there are grounds for denial, issue to the subdivider a public report authorizing the sale or lease in California of the lots or parcels within the subdivision.[5] The sale or lease, or offer for sale or lease, of any lots or parcels contained in a subdivision without first obtaining such a public report is prohibited.[6] In connection with the examination of a proposed subdivision, the Real Estate Department requires that the developer of such subdivision identify any lender that will be providing take-out loans to prospective purchasers and submit to the Department sample copies of the lender's notes, deeds of trust, mortgages or other

3. 12 C.F.R. § 545.6–11(g) provides:
"(1) With respect to any loan made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, a Federal association may not exercise a due-on-sale clause based on any of the following:
(a) Creation of a lien or other encumbrance subordinate to the association's security instrument;
(b) Creation of a purchase money security interest for household appliances;
(c) Transfer by devise, descent, or by operation of law upon the death of a joint tenant;
(d) Grant of any leasehold interest of three years or less not containing an option to purchase.
(2) With respect to any loan made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, no Federal association shall impose a prepayment charge or equivalent fee in connection with the acceleration of the loan pursuant to the exercise of a due-on-sale clause.
(3) With respect to any loan made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, a Federal association shall have waived its option to exercise a due-on-sale clause as to a specific transfer if, prior to that transfer, the association and the person to whom the property is to be sold or transferred (the existing borrower's successor in interest) reach written agreement that the credit of such person is satisfactory to the association and that the interest payable to the association on sums secured by its security instrument shall be at such rate as the association shall request. Upon such written agreement and resultant waiver, the association shall release such existing borrower from all obligations under the loan instruments, and for purposes of § 541.14(a), the association shall be deemed to have made a new loan to such existing borrower's successor in interest."

4. California Business and Professions Code § 11000.

5. California Business and Professions Code § 11018 provides, in pertinent part:
"The Real Estate Commissioner shall make an examination of any subdivision, and shall, unless there are grounds for denial, issue to the subdivider a public report authorizing the sale or lease in this State of the lots or parcels within the subdivision."

6. California Business and Professions Code § 11018.2.

security instruments to be executed in connection with such take-out loans.[7]

In late June or early July, 1977, Glendale Federal agreed with the developer of a partially constructed forty unit condominium project located in California (the "Casa del Rey Project") to provide take-out loans to prospective purchasers of the units. Shortly thereafter, the developer of the Casa del Rey Project notified defendant DeClercq of the Department of Real Estate that Glendale Federal would be providing take-out loans to purchasers of units in the project and provided to DeClercq sample forms of Glendale Federal's standardized notes and deeds of trust.

In early August, 1977, Glendale Federal was contacted by a representative of the Casa del Rey Project and advised that the Department of Real Estate had determined that the standardized note and deed of trust forms of Glendale Federal were "illegal" and that Glendale Federal could not serve as the take-out lender on the project unless its note and deed of trust were revised. Thereafter, Glendale Federal was provided by the developer with a letter authored by DeClercq stating that "the sample form note and deed of trust do not conform to California Civil Code Section 2924.6, which limits the exercisability of due-on-sale clauses.[8] Concurrent with Glendale Federal's receipt of DeClercq's letter, the association received written notice from the developer that in light of the position taken by the Department of Real Estate it would be unable to use Glendale Federal as the take-out lender on the Casa del Rey Project or on another project planned by the same developer.

Glendale Federal alleges in its complaint that defendants failed to issue a public report in this and other instances because the sample notes and deed of trust provided to the developer by Glendale Federal did not conform to California Civil Code Section 2924.6. The complaint seeks a judgment declaring that federal law exclusively governs the validity and exercisability of the "due-on-sale" clause utilized by Glendale Federal in its loan instruments, and an injunction restraining defendants from refusing to issue a public report under the Subdivided Lands Act, or refusing to act on an application for such a public report, on the ground that the notes or deeds of trust of Glendale Federal do not conform to California Civil Code Section 2924.6. Glendale Federal has abandoned its claim for injunctive relief in light of state defendants' statement that it is not now their policy to deny public reports on this basis.[9] *See United States v. W. T. Grant*, 345 U.S. 629, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

Defendants' motion to dismiss the action was denied on April 11, 1978. The Bank Board answered and admitted all the allegations of the complaint and filed a crossclaim against the state defendants. The

---

7. *See* Regulations of the Real Estate Commissioner, Title 10, California Administrative.

8. California Civil Code § 2924.6 provides:
   "(a) An obligee may not accelerate the maturity date of the principal and accrued interest on any loan secured by a mortgage or deed of trust on residential real property solely by reason of any one or more of the following transfers in the title to the real property:
   (1) A transfer resulting from the death of an obligor where the transfer is to the spouse who is also an obligor.
   (2) A transfer by an obligor where the spouse becomes a co-owner of the property.
   (3) A transfer resulting for a decree of dissolution of the marriage or legal separation or from a property settlement agreement incidental to such a decree which requires the obligor to continue to make the loan pay-

ments by which a spouse who is an obligor becomes the sole owner of the property.
   (4) A transfer by an obligor or obligors into an inter vivos trust in which the obligor or obligors are beneficiaries.
   (5) Such real property or any portion thereof is made subject to a junior encumbrance or lien.
   (b) Any waiver of the provisions of this section by an obligor is void and unenforceable and is contrary to public policy.
   (c) For the purposes of this section, 'residential real property' means any real property which contains at least one but not more than four housing units.
   (d) This act applies only to loans executed or refinanced on or after January 1, 1976."

9. *See* text at note 21, *infra*, and note 21.

cross-claim sought a declaratory judgment that federal law preempts state regulation of due-on-sale clauses both before and after the promulgation of 12 C.F.R. Sections 545.-6–11(f) & (g).[10] On March 6, 1979, the court, with the consent of the Bank Board, dismissed that portion of the cross-claim that sought declaratory relief with regard to the pre-regulation period, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.

On November 1, 1978, the court granted Glendale Federal's and the Bank Board's motion for partial summary judgment. The court held as follows:

"Federal law, including specifically 12 C.F.R. § 545.6–11(f) & (g), exclusively governs the validity and exercisability of due-on-sale clauses included in Glendale Federal's loan instruments executed on and after June 8, 1976. California law on the validity and exercisability of due-on-sale clauses is inapplicable to Glendale Federal's loan instruments executed on and after June 8, 1976." *Glendale Federal Savings and Loan Ass'n v. Fox*, 459 F.Supp. 903, 912 (C.D.Cal.1978).

The court reasoned that "[t]he language, history, structure, and purpose of the Home Owners' Loan Act evidence a clear Congressional intent to delegate to the Bank Board complete authority to regulate federal savings and loan associations and to preempt state regulation," and that the Bank Board, in promulgating 12 C.F.R. § 545.6–11(f) & (g), had exercised this preemptive authority. *Id.* at 910–12.

Glendale Federal and the Bank Board have now moved for summary judgment and entry of final judgment. They urge that the court's ruling on the motion for partial summary judgment and the court's denial of state defendants' motion to dismiss, which raised each of the affirmative defenses contained in state defendants' answer, dispose of all of the issues in the action and render entry of final judgment appropriate. State defendants contend that genuine issues of material fact remain with regard to their affirmative defenses. State defendants are correct in their contention that the court's denial of their motion to dismiss does not, in itself, dispose of any factual issues raised by their defenses. *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 690, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Such issues may, however, be resolved on a motion for summary judgment. *See Simon v. Eastern Ky. Welfare Rights Organization, supra*, 96 S.Ct. at 1924, n. 15. State defendants have in fact offered no evidence by way of affidavit, deposition testimony, or exhibits that materially changes the posture of the issues raised by the motion to dismiss. For the reasons set forth below, the court finds that no genuine issue of material fact remains, that state defendants' affirmative defenses are without merit, and that final judgment should be entered in favor of Glendale Federal and the Bank Board.[11]

---

**10.** The Board seeks a declaratory judgment stating that:

"1. The Board's current regulation, 12 C.F.R. § 545.6–11, exclusively governs the validity and exercisability of due-on-sale clauses contained in mortgage instruments used by federal savings and loan associations in California;

2. Prior to the adoption of the Board's current regulation on the subject, due-on-sale clauses were permitted for federal savings and loan associations throughout the country under exclusive and controlling general regulations of the Board and/or the federal common law;

3. In the HOLA, the Congress delegated to the Board exclusive authority to regulate

and supervise the lending practices of federal savings and loan associations throughout the country . . . ."

**11.** State defendants have at various times during this action raised several issues that the court believes may be disposed of summarily. First, state defendants have contended that Glendale Federal may, by its lending documents, have agreed to be bound by state law regardless of whether there is federal preemption. There is authority for the proposition that where a federal agency contracts with a private individual and specifically includes in the contract a provision that state law and not federal law governs the terms of the contract, state law may govern even in the face of general federal preemption.

## II.  ELEVENTH AMENDMENT

■ State defendants contend that the Eleventh Amendment bars this action because Glendale Federal failed to exhaust its administrative remedies.  Defendants rely primarily on *Prentis v. Atlantic Coastline Co.*, 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908).  Assuming *arguendo* that failure to exhaust administrative remedies would be a bar to this action against state officials, the defense is not available to state defendants here because California law provides Glen-

However, even if this general principle were applicable to the situation here, the notes and deeds of trust involved in this action contain no reference to the law of California.  State defendants' contention is therefore without merit.

Second, state defendants claim there remains an issue whether Bank Board regulations preempt certain regulations of the Department of Housing and Urban Development.  24 C.F.R. §§ 1710.25 and 1710.26 provide in part:

§ 1710.25 (a) Material filed with and found acceptable by State authorities charged with the responsibility of regulating the sale of lots in subdivisions may be accepted for filing by the Secretary as meeting the requirements of this part if the Secretary determines such action to be appropriate and such determination is set forth in § 1710.26.  .  .  .

.  .  .  .

(d) The Secretary will examine the material filed with the State authorities and require such changes, additional information, documents or certifications as the Secretary determines to be reasonably necessary or appropriate in the public interest or for the protection of purchasers.  The Secretary may refuse to accept any particular filing under this section when it is determined that acceptance is not in the public interest.

The provisions are permissive, not mandatory, and the Secretary may accept or reject any filing made in California.  The regulation does not require that the Secretary accept for filing material accepted by California but in violation of Bank Board regulations.  Nor does it address the Secretary's obligations with regard to filings rejected by California.  There is no issue as to whether Bank Board regulations preempt these provisions.

Third, state defendants contend that, even if federal law preempts state regulation of due-on-sale clauses in loan instruments of federal associations, the Real Estate Commissioner of the State of California retains discretion to deny public reports on any ground, including the ground that the take-out lender's sample notes and deeds of trust do not conform to California law.  State defendants cite no authority for this proposition, and the court concludes that it is without merit.  *See Sperry v.*

dale Federal with no administrative remedy for the wrong it alleges.

■ State defendants rely on California Business and Professions Code Section 11018.3, which provides an administrative remedy to "subdividers" objecting to the denial of a public report.[12]  Glendale Federal is not a "subdivider" within the meaning of this section.[13]  Further, Glendale Federal is not barred from bringing this action by the subdivider's failure to pursue any administrative remedy.

*State of Florida*, 373 U.S. 379, 83 S.Ct. 1322, 1326, 10 L.Ed.2d 428 (1963).

Finally, state defendants claim there is an issue regarding the validity of 12 C.F.R. § 545.-6–11(f) & (g).  State defendants cite no authority again and do nothing more than assert that the issue exists.  The issue is raised once by implication in a footnote to state defendants' opposition to the motion for partial summary judgment.  The court concludes that state defendants have not challenged the validity of the regulations.

12.  California Business and Professions Code § 11018.3 provides:

Any subdivider objecting to the denial of a public report or to denial by the commissioner of exemption from special regulation pursuant to Section 11000.5 may, within 30 days after receipt of the order of denial, file a written request for a hearing.  The commissioner shall hold the hearing within 20 days thereafter unless the party requesting the hearing shall have requested postponement.  If the hearing is not held within 20 days after request for a hearing is received plus the period of any such postponement or if a proposed decision is not rendered within 45 days after submission and an order adopting or rejecting such proposed decision is not issued within 15 days thereafter, the order of denial shall be rescinded and a public report issued.

13.  Although the chapter on Subdivided Lands of the Business and Professions Code itself provides no definition of "subdivider," Glendale Federal does not come within the conventional meaning of that term.  For example, California Government Code § 66423 provides that, for the Subdivision Map Act, " 'subdivider' means a person, firm, corporation, partnership or association who proposes to divide, divides or causes to be divided real property into a subdivision for himself or for others  .  .  .." In *Cowell v. Clark*, 37 Cal.App.2d 255, 258, 99 P.2d 594, 596 (1940), the court defined "to subdivide" as used in the act from which the Subdivided Lands chapter was derived to mean "To divide a tract of land into lots to sell before developing or improving them."

## III. VENUE

State defendants urge that venue is improper in the Central District of California. In response to state defendants' motion to dismiss, Glendale Federal argued that state defendants had waived their right to object to venue by entering into a stipulation for a temporary restraining order which stated that "any right, claim, or defense relating to the merits of the within action" was preserved. The right to object to improper venue can, under certain circumstances, be impliedly waived. *See* Wright & Miller, 5 Federal Practice and Procedure § 1352, at 575–76. However, it would be stretching the language and intent of the parties too far to infer from the stipulation any such waiver of procedural defenses. The court finds that defendants have not waived their right to object to improper venue. The question remains whether venue is improper in this district.

Venue in this action is governed by 28 U.S.C. § 1391(b), which provides:

"(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law."

The defendants in this action all reside in the Northern and Eastern Districts of California.[14] Unless the claim arose in the Central District, venue is improper. State defendants contend that the claim arose in the Northern District of California, because "the events of which plaintiff complains" occurred there. Glendale Federal argues that venue is proper in the Central District because Glendale Federal suffers the injury caused by state defendants' actions at its principal office, which is in this district.

The two principal tests employed to determine where a cause of action "arose" under Section 1391(b) are the "weight of the contacts" test and the "place of injury" test. The "weight of the contacts" test was first articulated in *Philadel-phia Housing Authority v. American Radiator & S.San. Corp.*, 291 F.Supp. 252 (E.D.Pa. 1968), a case involving an alleged price-fixing conspiracy. Attempting to determine where a cause of action alleged to have touched a number of jurisdictions arose, the court wrote:

"It is submitted that 'where the claim arose' should be dependent upon where the contacts weigh most heavily. A 'weight of the contacts' test would enable venue to exist in a district where the injury occurred, if significant sales causing substantial injury were made to plaintiffs there by defendants. If some other overt act pursuant to the conspiratorial meetings took place in a district and it was a significant and substantial element of the offense, then venue would lie in that district. Conversely, if one insignificant sale was made in a district, as set forth above in the hypothetical, venue would not lie there. Similarly, if a meaningless and insignificant meeting of the conspirators took place in a certain district, venue would not [lie] there either." *Id.* at 260–61.

The "weight of the contacts" test has been applied in a number of antitrust cases, e. g., *Redmond v. Atlantic Coast Football League*, 359 F.Supp. 666, 669–70 (N.D.Ind. 1973); *Fox-Keller, Inc. v. Toyota Motor Sales, U. S. A., Inc.*, 338 F.Supp. 812, 815–16 (E.D.Pa.1972); *California Clippers, Inc. v. United States S. F. Ass'n*, 314 F.Supp. 1057, 1062–65 (N.D.Cal.1970), in at least one trade-mark infringement case, *Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886, 890–92 (S.D.N.Y.1974), in at least one corporate mis-management case, *British-American Insurance Company Ltd. v. Lee*, 403 F.Supp. 31, 36 (D.Del.1975), and in a civil rights conspiracy case, *Kipperman v. McCone*, 422 F.Supp. 860, 877–79 (N.D. Cal.1976). Several courts have suggested that the "weight of the contacts" test is most appropriately applied in cases where, due to the fact that the action arises from a

---

14. Affidavits of John H. DeClercq, David H. Fox, and Richard T. Silberman, filed September 22, 1977.

multitude of similar acts performed throughout the country, the defendants are threatened with potentially unlimited venue. *Kipperman v. McCone, supra,* 422 F.Supp. at 878–79; *Honda Associates, Inc. v. Nozawa Trading, Inc., supra,* 374 F.Supp. at 891. The basic principle behind the test, however, that a district in which the parties and their activities have significant contacts is an appropriate forum for litigation between the parties, is applicable to all actions.

■ The "place of injury" test, originally applied primarily in tort actions, finds the claim to arise in the district in which the effect of the defendant's allegedly wrongful acts is felt. *Sheffield v. State of Texas,* 411 F.Supp. 709, 713 (N.D.Tex.1976); *Rosen v. Savant Instruments, Inc.,* 267 F.Supp. 232 (E.D.N.Y.1967). In *Sheffield,* plaintiffs challenged the constitutionality of the Texas Minimum School Foundation Grant Program, asserting that the program distributed state funds according to a formula based on erroneous land valuation. The court concluded that the claim arose in the district in which the effect of the program was felt by plaintiffs, not in the state capitol, where the program was enacted and administered. *Sheffield v. State of Texas, supra,* 411 F.Supp. at 713. In at least two cases in which a corporation has been injured, the "place of injury" has been found to be the company's principal place of business for the purpose of determining proper venue. *Iranian Shipping Lines, S. A. v. Moraites,* 377 F.Supp. 644 (S.D.N.Y.1974); *Albert Levine Associates v. Bertoni & Cotti,* 314 F.Supp. 169 (S.D.N.Y.1970).

■ The "weight of the contacts" test and the "place of injury" test merge insofar as the place of injury necessarily depends on the location of the injured party, and the injury itself is a "contact." The court finds that in this case both the weight of the contacts and the place of injury are in the Central District of California. The specific

denial of a public report alleged in the complaint took place in the Northern District of California but it related to a subdivision project located in that district. However, the course of conduct alleged in the complaint is pursued throughout California. Glendale Federal, the injured party, maintains its principal place of business in the Central District. All loans made by Glendale Federal are serviced from that office, in particular all decisions that Glendale Federal will make a construction loan or commit to make take-out loans on a development subject to the Subdivided Lands Act.[15] The economic affairs of the association are managed from Glendale Federal's main office. The injury that results to Glendale Federal if state defendants deny public reports to subdividers on the ground that Glendale Federal's sample note and deed of trust do not conform to California law, thereby precluding the association from serving as a take-out lender on developments in California, is felt primarily at Glendale Federal's principal office in the Central District. Further, the injury that results to the association due to the uncertainty as to whether California law applies to its loan instruments is felt at that office. The court therefore concludes that venue is proper in the Central District of California.

## IV. JURISDICTION

State defendants contend that Glendale Federal by its complaint seeks only to establish a defense of federal preemption to pending or potential state court actions to enforce state law, and that this court is therefore without jurisdiction.[16] This court disagrees.

The principle that a party may not create federal jurisdiction by seeking declaratory relief to confirm the validity of a potential federal defense to a state court action was first enunciated in *Public Service Commission of Utah v. Wycoff Co.,* 344 U.S. 237, 73

---

**15.** Affidavit of Donald P. Gelb, filed November 9, 1978.

**16.** State defendants point primarily to *People v. Glendale Federal Savings and Loan Ass'n,* Los

Angeles Sup.Ct. Case No. C 147 921, as the pending action to which Glendale Federal seeks to establish a defense.

S.Ct. 236, 97 L.Ed. 291 (1952). In *Wycoff*, the complaint sought a declaratory judgment that respondent's carriage of motion picture film and news-reels between points within Utah constituted interstate commerce and was therefore not subject to regulation by the state commission. The Supreme Court found that no existing controversy supported federal jurisdiction and ordered the action dismissed on that ground. *Id.* at 241, 243, 73 S.Ct. 236. The Court commented at length on the propriety of declaratory relief in the case:

"The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert in the Utah courts. . . . Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for declaratory judgment establishing a defense to that claim." *Id.* at 248, 73 S.Ct. at 242.

The doubt expressed by the Court in *Wycoff* has been applied by several courts as a bar to federal question jurisdiction. *Home Federal Savings and Loan Ass'n v. Insurance Dept. of Iowa*, 571 F.2d 423 (8th Cir. 1978); *Allegheny Airlines, Inc. v. Pennsylvania Public Utility Commission*, 465 F.2d 237 (3d Cir. 1972); *Chandler v. O'Bryan*, 445 F.2d 1045 (10th Cir. 1971). *See also First Federal Savings and Loan Ass'n of Boston v. Greenwald*, 591 F.2d 417 (1st Cir. 1979); *Rath Packing Co. v. Becker*, 530 F.2d 1295 (9th Cir. 1975), *aff'd sub nom. Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).

Glendale Federal contends that the *Wycoff* rule does not bar this action for declaratory and injunctive relief because the "impending or threatened" state court action would arise under federal law. A state court action by state defendants for an injunction restraining Glendale Federal from including due-on-sale clauses in its loan instruments, on the ground that the clause violates California law, would not arise under federal law. No federal question could be raised in the complaint except in anticipation of a probable defense of federal preemption, and such anticipation would not create federal question jurisdiction. *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 94 S.Ct. 1002, 1004, 39 L.Ed.2d 209 (1974). Further, the action could not be removed to federal court on the basis of a defense of federal preemption. *Id. See, e. g., Home Federal Savings and Loan Association v. Insurance Dept. of Iowa, supra; State of Washington v. American League of Professional Baseball Clubs*, 460 F.2d 654 (9th Cir. 1972); *Borzello v. Charles D. Sooy*, 427 F.Supp. 332 (N.D.Cal.1977); *Johnson v. First Federal Savings and Loan Association of Detroit*, 418 F.Supp. 1106 (E.D.Mich. 1976); *Marquette National Bank of Minneapolis v. First National Bank of Omaha*, 422 F.Supp. 1346 (D.Minn.1976). *But see Meyers v. Beverly Hills Federal Savings and Loan Ass'n*, 499 F.2d 1145 (9th Cir. 1974); *Rettig v. Arlington Heights*, 405 F.Supp. 819 (N.D.Ill.1975). Glendale Federal cannot avoid the *Wycoff* rule by claiming that its complaint attempts to establish a federal defense to a threatened state court action that would arise under federal law.[17]

Alternatively, Glendale Federal urges that this court has jurisdiction under the rationale of *Rath Packing Co. v. Becker, supra.* The opinion of the Court of Appeals for the Ninth Circuit in *Rath* casts considerable light on the meaning of *Wycoff.* In *Rath* state officials had filed several actions in state court seeking an injunction and civil penalties against the Rath company for

---

**17.** This court remanded *People v. Glendale Federal, supra* note 16, to state court precisely because the defense of federal preemption did not mean the case arose under federal law so as to create removal jurisdiction. *See People v. Glendale Federal Savings and Loan Ass'n*, CV 78–2296 (C.D.Cal.).

acts of unfair competition, including distribution for sale of packages of bacon that California inspectors had ordered off-sale. Rath filed an action in federal court seeking a declaratory judgment that federal law preempted the field and precluded application of the California packing regulations that were the basis of the off-sale order. The court examined the Supreme Court's opinion in *Wycoff*, writing:

> "The principle concern of the [*Wycoff*] Court was the nature of the controversy presented, 344 U.S. at 244, 73 S.Ct. at 240:
>
>> 'A multitude of rights and immunities may be predicated upon the premise that a business consists of interstate commerce. . . . We may surmise that the purpose to be served by a declaratory judgment is ultimately the same as respondent's explanation of the purposes of the injunction it originally asked, which is *"to guard against the possibility* that said Commission would attempt to prevent respondent from operating under its certificate from the Interstate Commerce Commission."' (emphasis supplied [by the Court]).

. . . The Court was applying its concern that the controversy was not ripe for adjudication by pointing out a declaratory plaintiff may not create a controversy by seeking to have a federal court adjudicate federal defenses he might assert in a

proceeding before a state court or administrative tribunal which is not ripe, but which is merely threatened or impending." 530 F.2d at 1304–05. (emphasis in original).

The court distinguished the controversy before it in *Rath* from that described in *Wycoff* on the basis that the off-sale orders in *Rath* had themselves created a controversy between the parties. The controversy "was not created by the institution of the state court actions against Rath, but arose independent thereof by virtue of the off-sale orders." *Id.* at 1305. There was thus more than "a possibility" of state action against *Rath*; such action had already been taken and was adversely affecting the company.[18]

■ In this action, the controversy arose independent of any pending or threatened state court action, as a result of the defendants' denial of public reports. The action was brought by Glendale Federal not to guard against the possibility of state action, but to remedy state action already taken and adversely affecting Glendale Federal. The court therefore concludes that this court has subject matter jurisdiction over the action.[19]

## V. CASE OR CONTROVERSY

State defendants contend there is no justiciable case or controversy as to two portions of the declaratory relief sought by

---

**18.** Although *Wycoff* disapproves only of declaratory relief actions to establish federal defenses to "impending or threatened state court action," 73 S.Ct. at 248, courts have interpreted the Supreme Court's doubt to bar jurisdiction even where the state has already taken judicial action against the declaratory plaintiff in state court. *Home Federal Savings and Loan Ass'n v. Insurance Dept. of Iowa, supra; see First Federal Savings and Loan Ass'n of Boston v. Greenwald,* 591 F.2d 417, 423 n.8 (1st Cir. 1979). The court here relies on the denial of public reports by the state defendants, action analogous to the off-sale orders in *Rath*, rather than the pendency of the state's action in *People v. Glendale Federal, supra* note 16, in concluding that a controversy exists independent of any threatened state court action.

**19.** The First Circuit has concluded that the rationale of *Rath Packing Co. v. Becker, supra,*

supports jurisdiction in an action for declaratory relief where state and federal regulations currently in effect subject a savings and loan association to conflicting requirements. *First Federal Savings and Loan Ass'n of Boston v. Greenwald, supra,* 591 F.2d at 423 n.8. The First Circuit decided that the conflicting requirements presented a justiciable controversy independent of any enforcement action by state officials. *Id.* The district court in *First Federal* had found that the state regulation in question directly conflicted with and was preempted by federal law. *Id.* at 422. It is unclear to what extent the Court of Appeals relied on this finding in determining that the "conflicting requirements" created a controversy taking the action outside of *Wycoff*. This court need not and does not rely on any conflict between state and federal regulation in concluding that the court has jurisdiction.

Glendale Federal. First, they argue that no controversy exists with regard to the exercisability of due-on-sale clauses where the property securing the loan is sold outright, because California law regarding such situations is uncertain. Second, state defendants claim that any controversy with regard to denial of public reports by the Department of Real Estate is moot, because there is no threat of future enforcement against Glendale Federal. Both arguments are without merit.

### A. Outright Sale Situations

In their motion to dismiss, state defendants suggested that state and federal law may not conflict with regard to the exercisability of due-on-sale clauses in "outright sale" situations, because the California Supreme Court specifically reserved any decision in that area in *Tucker v. Lassen Savings & Loan Ass'n*, 12 Cal.3d 629, 116 Cal. Rptr. 633, 526 P.2d 1169 (1974). Since that motion was filed, the California Supreme Court decided *Wellenkamp v. Bank of America*, 21 Cal.3d 943, 148 Cal.Rptr. 379, 582 P.2d 970 (1978), holding that "a due-on clause contained in a promissory note or deed of trust cannot be enforced upon the occurrence of an outright sale unless the lender can demonstrate that enforcement is reasonably necessary to protect against impairment to its security or the risk of default." *Id.*, 148 Cal.Rptr. at 385–86, 582 P.2d at 976–977. Any argument that no controversy exists as to "outright sale" situations, or that the federal courts should abstain pending a determination of state law, is therefore no longer available to state defendants. In any event, Glendale Federal by its complaint does not merely seek a declaration as to whether federal and state law regarding due-on-sale clauses are in

conflict. Rather, it seeks a declaration that California law is inapplicable, whether or not it conflicts with federal law, in determining the validity and exercisability of due-on-sale clauses contained in Glendale Federal's loan instruments. The State of California has repeatedly contended in this case and elsewhere that California law does apply to such clauses.[20] The court finds that a controversy exists between the parties as to the applicability of California law to due-on-sale clauses contained in Glendale Federal's loan instruments, and that the controversy necessarily encompasses the question whether California law applies in an "outright sale" situation.

### B. Mootness

State defendants contend that this action is moot because no threat exists that public reports will be denied in the future on the ground that the sample deeds and notes of Glendale Federal do not conform to Section 2924.6 of the California Civil Code. They claim that it is not now and never has been the policy of the California Department of Real Estate to deny public reports under the Subdivided Lands Act on that ground, and that the denials that led to this action were mistakes by the officials responsible.[21] However, defendants have not acknowledged that the denials of the public reports were unlawful or that California law does not apply to the due-on-sale clauses contained in Glendale Federal's sample deeds and notes. Further, they have not stated that they would not deny public reports in the future on the ground that the sample deeds and notes do not conform to Section 2924.6, were they to obtain a ruling in this or another court that California law does apply. The court does not believe that

---

20. In their answer to Glendale Federal's complaint, state defendants allege that "Glendale Federal is bound by the applicable laws of the State of California with respect to the exercise of due on sale clauses contained in their deed of trust instruments." State Defendants' Answer to Complaint, filed May 11, 1978, p. 9. *In People v. Glendale Federal, supra* note 16, the State moved for summary judgment, seeking a declaration that Glendale Federal was subject

to California Civil Code § 2924.6. The Attorney General of the State of California has also filed *amicus curiae* briefs in at least two other pending actions, urging that federal law does not preempt state regulation of federal savings and loan associations.

21. Affidavits of John H. DeClercq, David H. Fox, and Richard T. Silberman, filed September 22, 1977.

state defendants have demonstrated that this controversy is moot.

In *United States v. W. T. Grant, supra,* the Supreme Court · rejected the respondents' contention that, because the interlocks between the corporate directorates alleged in the complaint no longer existed and respondents had no intention of reviving them, the action was moot. The Court wrote:

"[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i. e., does not make the case moot. A controversy may remain to be settled in such circumstances, e. g., a dispute over the legality of the challenged practices. The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion. . . .

*The case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.' The burden is a heavy one.* Here the defendants told the court that the interlocks no longer existed and disclaimed any intention to revive them. Such a profession does not suffice to make a case moot although it is one of the factors to be considered in deciding the appropriateness of granting an injunction against the now-discontinued acts." 73 S.Ct. at 897 (footnotes and citations omitted) (emphasis added).

Two recent opinions of the Court of Appeals for the Ninth Circuit clarify the mootness standard set out in *W. T. Grant. See Williams v. Alioto,* 549 F.2d 136 (9th Cir. 1977); *Seay v. McDonnell Douglass Corp.,* 533 F.2d 1126 (9th Cir. 1976).

In *Seay,* the plaintiffs claimed that a union was using dues to finance political campaigns over the protest of union members. After the action was filed, the union issued a new policy statement to the effect that union dues could not be used for political activities over the protest of union members and that members who objected could obtain a pro rata rebate. The court stated:

"This is a case in which defendant voluntarily ceased its allegedly wrongful conduct after litigation had been instituted. The Supreme Court has held that under these circumstances, voluntary termination of allegedly wrongful conduct does not deprive a court of its power to act. *United States v. W. T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303, 1309 (1953). *The case should not be held moot unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' Pacific Maritime Association v. IOWU,* 454 F.2d 262 (9th Cir. 1971), *cited with approval in Electrical Workers 77 v. Puget Sound Power and Light Co.,* 506 F.2d 523, 524 (9th Cir. 1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1429, 43 L.Ed.2d 674 (1975). In the instant case there is no assurance that the union will continue to abide by the provisions of Circular No. 669 once the present litigation is terminated. It has known of its obligation to provide for a rebate of fees used for political purposes . . . since 1961 . . . . In light of these circumstances it would be error for this court to conclude that this litigation is moot." 533 F.2d at 1130 (emphasis added).

In *Williams,* plaintiffs challenged the constitutionality of "Operation Zebra," a San Francisco police program involving the stopping, questioning, and frisking of male blacks in an effort to apprehend the Zebra killer. The original program guidelines were very broad, but new guidelines were issued which defendants claimed eliminated any constitutional defects and mooted the case. The Court of Appeals rejected that argument:

"When events have permanently destroyed any possibility of repetition, the case is moot. *Board of School Commissioners v. Jacobs,* 420 U.S. 128, 129, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975); *DeFunis v. Odegaard,* 416 U.S. 312, 317, 94 S.Ct. 1704, [1707], 40 L.Ed.2d 164 (1974). Similarly, when the chance of repetition is remote and speculative, there is no jurisdiction. *SEC v. Medical Committee for*

*Human Rights*, 404 U.S. 403, 406, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972); *Hall v. Beals*, 396 U.S. 45, 49, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969). 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.' *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953).

.    .    .    .    .

Applying this doctrine to the present case, we hold that the April 25 revised guidelines did not moot this legal action. Even if they did correct constitutional infirmities in the earlier directives, the April 25 guidelines did not end the controversy or divest the district court of the power to grant an injunction. Between April 17 and April 25, police officials issued at least six directives relating to the Zebra program. On this proven record of almost one new order per day, *there was no reason for the court to conclude that new, and possibly contradictory, pronouncements might not be issued within the next week.* In fact, the guidelines themselves suggested that they could be revised easily, and that the police officers could revert to their prior, allegedly unconstitutional practices." 549 F.2d at 142–43. (emphasis added).

The court reiterated the *Grant* Court's indication that "defendants have a heavy burden of showing that they will not revive their challenged conduct," and that "mere disclaimers are not satisfactory." Id. at 143.[22]

In *Uzzell v. Friday*, 401 F.Supp. 775 (M.D. N.C.1975), *modified*, 547 F.2d 801 (4th Cir. 1977), *modified en banc* 558 F.2d 727 (4th Cir. 1977), *vacated and remanded*, 438 U.S. 912, 98 S.Ct. 3139, 57 L.Ed.2d 1158 (1978), a case relied on by defendants, two students had challenged the practice of a university of funding a discriminatory student organization. The university changed its policy and claimed the action was moot. The district court agreed, writing:

"While there is some dispute as to the proper standard for finding mootness when the defendant has discontinued the challenged acts, 'the test of mootness is whether the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated.' * * * As the commentators state, the prediction of possible recurrence of the challenged activity is often difficult and must to some degree depend on 'individualized judgment and intuition.' * * * However, in the area of official action, courts have been more receptive to declarations that abandoned illegal policies will not be reinstated particularly when, as in this case, the challenged policy is terminated altogether and not just its application in particular circumstances." Id. at 779 (citations omitted).

The district court emphasized that the University had filed with the Department of Health, Education, and Welfare "clearly stated directives and policies . . . to terminate funding to any organization with discriminatory membership policies," and that the policy of the University had "come full circle to an unequivocal refusal to fund any racially exclusive organization." Id.[23]

---

22. The *Williams* court concluded that the convictions of four defendants identified as the Zebra killers and the cessation of the homicides did moot the case. 549 F.2d at 142–43. The court wrote:

"The likelihood that such a program will be used in the future in incalculable. Perhaps if the City were confronted with another series of unsolved homicides that frustrated normal investigative techniques, a large-scale program of stops, frisks, and questioning might reappear. As Chief Scott stated, the Police Department might again use Zebra-like guidelines in a similar situation. But the

relevant question is: Is this situation likely to arise? Although we can imagine its recurrence, we cannot consider it more than a speculative possibility." Id. at 143–44.

Obviously, there is more than a speculative possibility that Glendale Federal will be involved in transactions in the State of California that involve its loan instruments.

23. The students had also challenged the constitutionality of restrictions based exclusively on race on appointments to the Campus Governing Council and the Student Honor Court. The district court granted summary judgment in

State defendants have not met their burden of showing that there is "no reasonable expectation that the wrong will be repeated." *United States v. W. T. Grant, supra,* 73 S.Ct. at 897. Instead, it appears that state defendants are seeking a ruling in their favor on the preemption issue, and if they obtain it here or elsewhere they may once again deny public reports under the Subdivided Lands Act on the ground that a take-out lender's sample notes and deeds of trust do not conform to California Civil Code Section 2924.6. State defendants have offered the court nothing more than a statement that the denials of the public reports in this case were "mistakes" and that it is not now the policy at the Department of Real Estate to make such denials. They have not acknowledged that the denials were unlawful, and they have not stated, as the defendants in *Uzzell* had, that they will not reinstitute the allegedly unlawful policy. The Court finds that there is a reasonable expectation that the allegedly wrongful conduct will recur and therefore concludes that the case is not moot.

█ The court further notes that Glendale Federal and the Bank Board seek only declaratory relief, and that it is substantially more difficult to moot an action for declaratory rather than injunctive relief. In *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974), the employer-plaintiffs sought an injunction restraining the state from making welfare payments to employees engaged in a strike, and a declaratory judgment that state interpretive regulations according public assistance benefits to striking workers were null and void. 94 S.Ct. at 1696–97. The Supreme Court agreed with the respondent union that the claim for injunctive relief was mooted by the termination of the strike, but concluded that the claim for declaratory relief was not mooted. *Id.* at 1697–98. The Court wrote:

> "[E]ven though the case for an injunction dissolved with the subsequent settlement of the strike and the strikers' return to work, the parties to the principal controversy, that is, the corporate petitioners and the New Jersey officials, may still retain sufficient interests and injury as to justify the award of declaratory relief. The question is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment'." * * *
>
> . . . *[T]he challenged governmental activity in the present case is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties."* *Id.* at 1698 (emphasis added).

State defendants' repeated contention that California law governs the validity and exercisability of Glendale Federal's due-on-sale clauses, and the possibility that the complained of conduct will recur, similarly have a "substantial adverse effect" on the interests of Glendale Federal and the Bank Board. The court concludes that the facts involved in this action satisfy the requirement of Article III, § 2 of the Constitution, and of the Declaratory Judgment Act, that a case or controversy exist between the parties.

## VI. PENDENCY OF STATE ACTIONS

State defendants have consistently urged this court to decline to exercise any jurisdiction over this action due to the pendency of litigation regarding the same issues in the California courts.[24] The state court litigation upon which state defendants rely has a

---

favor of defendants on these claims on the ground that they did not state a case or controversy. *Uzzell v. Friday, supra,* 401 F.Supp. at 779–82. The Court of Appeals reversed and directed the district court to enter summary judgment in favor of plaintiffs. 547 F.2d at 803–05. The Supreme Court vacated the judgments and remanded the case for further consideration in light of *Regents of University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978). 98 S.Ct. 3139 (1978).

24. State defendants point again primarily to *People v. Glendale Federal, supra* note 16.

different factual genesis than this action, but involves nearly the identical legal controversy as to whether state regulation of due-on-sale clauses contained in loan instruments of federal savings and loan associations is preempted by federal law. The court nevertheless concludes that this is not an appropriate circumstance in which to decline to exercise its jurisdiction.

In *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court articulated the controlling legal standard to justify dismissal of an action in federal court where jurisdiction is properly invoked because of a concurrent proceeding in state court. The Court noted that "the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . .,'" and that the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." 96 S.Ct. at 1246. Given this obligation, the Court wrote, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.* The Court then turned to a discussion of "exceptional" circumstances that might justify such a dismissal:

> "It has been held . . . that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts. . . . In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against the exercise is required. . . . *Only the clearest*

*of justifications will warrant dismissal."* 96 S.Ct. at 1246–47 (citations omitted) (emphasis added).

The process required by the Court's decision is a balancing of equities, *see Puerto Rico International Airlines v. Silva Recio*, 520 F.2d 1342 (1st Cir. 1975), with the balance heavily weighted toward the federal courts' "unflagging" obligation to exercise the jurisdiction granted to them.

■ In this action, there is a possibility that the state and federal proceedings will be duplicative and that a conflict may arise between the state and federal courts. Both parties, however, have a substantial interest in having the issues presented by this action resolved, *see McGraw-Edison Co. v. Performed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966), and the federal court appears to have reached such a resolution with more deliberate speed than the state court. *See Wong v. Bacon*, 445 F.Supp. 1177, 1187–88 (N.D.Cal.1977). Further, the issues presented are exclusively issues of federal law, and the federal court is therefore neither an inconvenient nor an inappropriate forum. *See Wong v. Bacon, supra*, 445 F.Supp. at 1188. Given the extreme disinclination of the Supreme Court to sanction a refusal to exercise jurisdiction due to the pendency of concurrent state court litigation, this court concludes that, even without considering the presence of the Bank Board in the action, these circumstances do not justify such a refusal.

■ The presence of the Bank Board, a federal agency, in this litigation renders a refusal to exercise jurisdiction even less appropriate. A federal court may enjoin state judicial proceedings, notwithstanding the Anti-Injunction Act, 28 U.S.C. § 2283, "when the plaintiff in the federal court is the United States itself, or a federal agency asserting 'superior federal interests.'" *Mitchum v. Foster*, 407 U.S. 225, 235–36, 92 S.Ct. 2151, 2158–59, 32 L.Ed.2d 705 (1972), *citing NLRB v. Nash-Finch Co.*, 404 U.S. 138, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971); *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957).

The rationale behind that exception to the Anti-Injunction Act applies with equal force to this action for declaratory relief.

In *NLRB v. Nash-Finch*, supra, Nash-Finch had successfully sought an injunction from a Nebraska state court restricting picketing by a labor union at its stores. The NLRB brought suit in federal court seeking to restrain enforcement of the state court injunction on the ground that it regulated conduct governed exclusively by the National Labor Relations Act. The Court of Appeals denied relief on the basis of the Anti-Injunction Act, and the Supreme Court reversed, holding that the Act impliedly allowed federal agencies to enjoin state action where the agency's power preempts state law. 92 S.Ct. at 377. The Court quoted from *Leiter Minerals, Inc. v. United States, supra*, 77 S.Ct. at 290–91, in stating the reason for the exception:

> " 'The statute is designed to prevent conflict between federal and state courts. . . . This policy is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than when it is the United States which seeks a stay to prevent threatened irreparable injury to a national interest. The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings . . . would be so great that we cannot reasonably impute such a purpose to Congress from the general language of 28 U.S.C. § 2283 alone.' " 92 S.Ct. at 377–78.

The Court of Appeals for the Ninth Circuit has held that the exception to the Anti-Injunction Act applies when the United States or a federal administrative agency is enforcing applicable federal law. *SEC v. Wencke*, 577 F.2d 619 (9th Cir. 1978); *Puget Sound Gillnetters Ass'n v. U. S. District Court*, 573 F.2d 1123 (9th Cir. 1978). In a situation nearly identical to the one before this court, the First Circuit, relying on the *Nash-Finch* rationale, held that abstention from the exercise of jurisdiction is inappropriate where a federal agency asserts "superior federal interests" in a declaratory judgment action. *First Federal Savings and Loan Ass'n v. Greenwald, supra*, 591 F.2d at 424.

In *Greenwald*, the Bank Board was named as a defendant, not a plaintiff, in an action for declaratory relief against the Massachusetts Commissioner of Banks. The First Circuit concluded that the rationale behind *Nash-Finch* nevertheless applied:

> "It is true that the Bank Board is not a plaintiff in the declaratory judgment action, but rather was joined as a defendant along with the Commissioner. Despite that posture, however, the Bank Board has actively asserted its position that federal law, including its own regulations, exclusively governs the legal obligations of federally-chartered savings and loan associations to pay interest on escrow accounts. It has challenged the Commissioner's effort to enforce the Massachusetts statute in both its answer and its motion for summary judgment. There can be no doubt that the Bank Board is asserting what it perceives to be 'superior federal interests' in the declaratory judgment action. In this situation, the rationale of *Nash-Finch* and *Leiter Minerals* applies as well as if the Bank Board had brought its own lawsuit." Id.

In this action, the Bank Board has just as actively asserted its position that federal law exclusively governs the validity and exercisability of due-on-sale clauses in the loan instruments of federal savings and loan associations. The rationale behind *Nash-Finch*, as well as the result of the balancing process mandated by *Colorado River Water Cons. Dist. v. United States, supra*, preclude this court from declining to exercise its jurisdiction over this action for declaratory relief.

## CONCLUSION

The court finds that no genuine issue of material fact remains in this action. Glendale Federal's and the Bank Board's motions for summary judgment are granted. Federal law, including specifically 12 C.F.R. § 545.6–11(f) & (g), exclusively governs the validity and exercisablity of due-

on-sale clauses included in the loan instruments of federally-chartered savings and loan associations executed after June 8, 1976. California law on the validity and exercisability of due-on-sale clauses does not apply to such loan instruments.

The foregoing shall be deemed findings of fact and conclusions of law.

Judgment will be entered in favor of plaintiff Glendale Federal Savings and Loan Association and cross-claimant Federal Home Loan Bank Board.